COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bray and Frank
Argued at Chesapeake, Virginia


ERICK DONTAE PORTER

MEMORANDUM OPINION[*] BY
v.    Record No. 0637-00-1          JUDGE RICHARD S. BRAY
APRIL 3, 2001
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Von L. Piersall, Jr., Judge

J. Edgar Demps (James E. Short; Roy, Larsen,
Romm & Lascara, on brief), for appellant.

Thomas M. McKenna, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


A jury convicted Erick Dontae Porter (defendant) of second

degree murder and abduction, violations of Code §§ 18.2-32 and

-48, respectively.  On appeal, defendant challenges the

sufficiency of the evidence to prove both venue and the

convictions.  Finding no error, we affirm the trial court.

The parties are fully conversant with the record, and this

memorandum opinion recites only those facts necessary to a

disposition of the appeal.

In reviewing the sufficiency of the evidence, we consider the

record "'in the light most favorable to the Commonwealth, giving

it all reasonable inferences fairly deducible therefrom.  In so

[*] Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth . . . .'" Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998) (citation omitted).

> [T]he fact finder is not required to accept entirely either the Commonwealth's or the defendant's account of the facts. Similarly, the fact finder is not required to believe all aspects of a defendant's statement or testimony; the judge or jury may reject that which it finds implausible, but accept other parts which it finds to be believable.

Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993) (citation omitted). Thus, the credibility of the witnesses, the weight accorded the testimony, and the inferences drawn from the proven facts are matters to be determined by the fact finder. Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989). The judgment of the trial court will not be disturbed unless plainly wrong or unsupported by the evidence. See Code § 8.01-680.

## I.

The instant prosecution and related investigation followed the discovery of Steven Edwards' (Edwards) corpse in a Suffolk drainage ditch on October 21, 1996. Lakisha Edwards had seen Edwards alive on October 12, 1996, together with defendant, Mikal Corbett, Greg Mabry and Deontrace Ward. Later that day, Archie Bazemore and defendant were "hang[ing] in and smok[ing]

-

weed" at defendant's residence, located in the City of Portsmouth, when Bazemore witnessed Mabry and Ward escort Edwards, bound and gagged with "duct tape on his hands and mouth," into defendant's bedroom.  Edwards appeared "frightened," and Mabry and Ward "was [sic] talking about what they was going to get and all this from Tiny Bop by taking [Edwards] hostage."  Shortly thereafter, Bazemore observed Mabry, Ward and Corbett "taking [Edwards] to the shed" (garage) adjacent to the residence.

Demarkus "Tiny Bop" Parker also saw Edwards, together with Ward and Mabry, on the morning of October 12.  Parker, an admitted "drug dealer," "used to have [Edwards] with [him] all the time," and loaned him a van later in the day.  When Edwards did not return as expected and efforts to contact him were unsuccessful, Parker, fearful that Edwards had been "arrested," "started worrying."  The following morning, Edwards telephoned Parker and advised, "they want the money and the drugs and I'm scared," adding "[t]hey ain't playing, . . . [j]ust give it to them."  When Parker inquired, "whoever got you?," Edwards answered, "Little Gary [Mabry] and them."

Parker, afraid of "trouble . . . behind the drugs," did not report Edwards' call to police but, "maybe two or three days" later, accompanied a "lot of family members" on a search of the garage at defendant's residence.  Apart from "burnt up paper and stuff . . . like to keep warm or something," the group found no

-

evidence of Edwards.  Similarly, Portsmouth Police Officer Melvin Hike searched the garage on October 15 and did not find Edwards on the premises.

A "couple days" after initially observing Edwards captive at defendant's home, Bazemore returned to the house, and defendant "took him to the shed where [Edwards] was at and showed him" to Bazemore.  Edwards, his wrists bound, was on the floor, "taped up, like he'd been beat up."  In Bazemore's presence, defendant began "tapping" Edwards, but he remained motionless.  Defendant then confided to Bazemore that "they were taking [Edwards] hostage to get some money and drugs from Tiny Bop."  Two days thereafter, on or about October 16, Bazemore, again at defendant's residence, observed Mabry and Corbett in the garage, with Corbett "on top of [Edwards] poking and stabbing him and stuff."  Edwards' mouth was "tape[d]" but "he moved" in response to Corbett's abuse.  Sometime later, while in defendant's house and in his presence, Mabry remarked "we're not going to get nothing now."

"About three days" thereafter, defendant came to Bazemore's residence, and the two proceeded to Mabry's house in defendant's car.  En route, defendant "told [Bazemore] he had [Edwards'] body in the trunk."  Arriving at Mabry's home, defendant "went to talk to" Mabry, and Bazemore opened the trunk and "seen a body . . . wrapped up" in the sheet Edwards "were [sic] wrapped up in the whole time."  Defendant confessed to Bazemore that "they tortured"

Edwards and warned "[s]omething would [happen] to [Bazemore] if [he] said something."

On October 21, 1996, Suffolk Police Officer D.L. Ballard, in response to a citizen report, found Edwards' corpse in a drainage ditch, bound in duct tape, a sheet "wrapped around the upper portion of [the] body." Forensic analysis definitively matched the sheet with another found in defendant's residence. Similarly, the duct tape on Edwards' body was matched to a roll of tape also discovered at defendant's house.

An autopsy conducted by Dr. Leah Bush disclosed that Edwards had died from "[a]sphyxia by [s]mothering." Dr. Bush opined that, after "some time," the cloth sheet wrapped around Edwards' head had become "sodden" with moisture from his breath, which prevented "free air flow[] through the fabric" and resulted in suffocation. Her examination revealed "no penetrating or blunt force trauma [or] . . . any significant external injury . . . that would produce death." She "estimate[d]" that Edwards had been dead for "two to five days when . . . found" on October 21.

Convicted by the jury of second degree murder and abduction, defendant appeals, challenging the sufficiency of the Commonwealth's evidence to establish both venue and the convictions.

II.

Generally, "the prosecution of a criminal case shall be had in the county or city in which the offense was committed." Code

-

§ 19.2-244.  "To prove venue, the Commonwealth must produce evidence sufficient to give rise to a 'strong presumption' that the offense was committed within the jurisdiction of the court, and this may be accomplished by either direct or circumstantial evidence."  Cheng v. Commonwealth, 240 Va. 26, 36, 393 S.E.2d 599, 604 (1990).

Here, Bazemore observed Edwards at the inception of the abduction in defendant's home and on two subsequent occasions, restrained and confined, in defendant's garage, all located in the City of Portsmouth.  During Bazemore's successive visits to the garage, spanning several days, he watched as Edwards was physically abused by his captors, including defendant.  Immediately following the final visit, Mabry remarked that Edwards was no longer of value for ransom.  Bazemore testified Edwards was "wrapped up" in a sheet "the whole time" and noted the same sheet covered his dead body when seen in the trunk of defendant's car on or about October 19, two days before the discovery in Suffolk.  Clearly, such evidence establishes a strong presumption that Edwards died by suffocation in the City of Portsmouth.[1]

_____

[1] Moreover, Code § 19.2-248 provides that "[I]f a mortal wound, or other violence or injury, be inflicted . . . in one county or city, and death ensues therefrom in another county or city, the offense may be prosecuted in either."  The instant record clearly establishes violence inflicted upon Edwards, in Portsmouth, beginning with abduction and followed by several days of "torture."  Edwards' death inarguably "ensued" from such "violence."  Thus, whether death occurred in Suffolk or "another county or city," Code § 19.2-248 permits prosecution for the offense in Portsmouth.

-

III.

"Code § 18.2-18 provides that in the case of every felony, a principal in the second degree shall be indicted, tried, convicted, and punished in all respects as if a principal in the first degree." Kearney v. Commonwealth, 32 Va. App. 790, 794, 531 S.E.2d 23, 25 (2000).

> "To show an accused guilty of a crime as a principal in the second degree, the Commonwealth must show that the accused was present, aiding and abetting, and intended his or her words, gestures, signals, or actions to in some way encourage, advise, urge, or in some way help the person committing the crime to commit it."

Bass v. Commonwealth, 31 Va. App. 373, 389, 523 S.E.2d 534, 542 (2000) (citation ommitted).

The instant record establishes that, immediately prior to the abduction, Edwards was in the company of defendant, Mabry, Corbett and Ward. Later, Bazemore observed him, bound and gagged with duct tape, at defendant's residence, again with defendant, Mabry and Ward. Bazemore watched as Mabry, Ward and Corbett escorted the captive Edwards to defendant's garage and subsequently observed Edwards, restrained and otherwise abused by defendant, Mabry and Corbett, in the garage over a period of several days. Defendant admitted complicity in a scheme to abduct Edwards for ransom from Parker. Edwards' dead body was subsequently transported in defendant's car, and he threatened Bazemore to maintain his silence or "something would . . . happen" to him.

-

Such evidence, together with other proof, was sufficient to establish beyond a reasonable doubt that defendant approved, encouraged and assisted in the abduction and murder of Edwards as a principal in the second degree.

Accordingly, we affirm the convictions.

<u>Affirmed.</u>