COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Bray and Annunziata
Argued at Richmond, Virginia


GREGORY WAYNE TONEY

                                    MEMORANDUM OPINION* BY
v.    Record No. 1024-01-2          JUDGE LARRY G. ELDER
                                          APRIL 30, 2002
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                    Paul M. Peatross, Jr., Judge

          Kelly A. Hobbs (George H. Dygert &
          Associates, on brief), for appellant.

          Richard B. Smith, Senior Assistant Attorney
          General (Jerry W. Kilgore, Attorney General,
          on brief), for appellee.


     Gregory Wayne Toney (appellant) appeals from his bench

trial convictions for grand larceny in violation of Code

§ 18.2-95 and statutory burglary in violation of Code § 18.2-91.

On appeal, he contends the evidence was insufficient to prove

more than his mere presence at the scene of the break-in.  We

hold that evidence of appellant's presence at the scene, coupled

with the fact that he remained at the scene, fled with the

actual perpetrators and shared in the fruits of the crime, was

sufficient to prove his guilt of the charged offenses as a

principal in the second degree.  Therefore, we affirm.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

I.

BACKGROUND

At around 2:00 a.m. on September 17, 2000, Tiffany Moneymaker, appellant, appellant's brother William Toney (Toney), and Alfred Greer met near Moneymaker's residence and walked along a nature trail to the Hilltop Convenience Store and Jim Wood's Barber Shop. Moneymaker went into the restroom, and when she came out, the three males were standing at the barbershop door. Toney was trying to open the door with "his license or something."

When Toney was unsuccessful in opening the door with his license, he "busted" the door open with a log. Moneymaker then saw Toney and Greer enter the barbershop. Appellant was standing next to the door at that time, but she did not see appellant go in and did not know whether he did so. Moneymaker was "going to leave" and began walking away. About a minute after Toney and Greer entered the barbershop, Moneymaker saw them exit. Greer had several pairs of clippers in his hand.

Toney, Greer and appellant then ran across the parking lot to the fence at the edge of the woods where Moneymaker was walking. The foursome then walked through the woods to Sachem Village. While they were in the woods, Moneymaker heard Toney counting six pair of clippers. He set the clippers next to a tree.

-

In a nearby parking lot, Greer kicked in the window of a small car and took a cellular telephone while appellant and Toney waited in the woods. Greer came back into the woods and "was talking about going to break into something else." While appellant and Moneymaker waited in the woods near the clippers, Greer and Toney then broke the window of a van and took a large saw, which Greer and Toney carried into the woods. The foursome then left the woods, with Toney carrying the saw and Greer carrying the clippers. Toney dropped the saw off at his grandmother's, appellant left, and Toney, Greer and Moneymaker went to the home of someone named Sandy. Moneymaker never saw appellant carrying any of the stolen items. On the day after the theft, Greer gave appellant three pairs of the stolen clippers.

Detective Scott Kuykendall interviewed appellant. After first denying any involvement, appellant told Kuykendall that "Greer was trying to sell him some clippers and later gave him [a pair], and then [appellant] later admitted that he was present when [Greer] and [Toney] broke into Wood['s] Barber Shop, and [Greer] took the clippers while [appellant] and [Moneymaker] watched from the woods." Appellant said he stayed in the woods with Moneymaker while Greer and Toney went through the woods and he denied seeing them carrying anything.

The Commonwealth's evidence also established that, on two occasions, appellant admitted to Jim Wood, the owner of the

-

burglarized barbershop, that "he had some of the clippers and he would give them back to Mr. Wood[]." Wood testified that he knew appellant prior to the break-in and that sometime after the break-in, appellant telephoned him. During that conversation, appellant said he had some of the clippers and Greer had some of the clippers, and appellant indicated a desire to return the clippers to Wood.

## II.

## ANALYSIS

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, granting to the evidence all reasonable inferences fairly deducible therefrom. Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). The fact finder is not required to believe all aspects of a witness' testimony; it may accept some parts as believable and reject other parts as implausible. Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993). Further, any element of a crime may be proved by circumstantial evidence, see, e.g., Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988), provided the evidence as a whole "is sufficiently convincing to exclude every reasonable hypothesis except that of guilt," Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983).

-

Appellant was convicted for grand larceny and statutory burglary. "Larceny is the wrongful taking of goods of another without the owner's consent and with the intention to permanently deprive the owner of possession of the goods." Bright v. Commonwealth, 4 Va. App. 248, 251, 356 S.E.2d 443, 444 (1987). Statutory burglary requires proof of a breaking and entering with the intent to commit larceny therein. Code § 18.2-91.

Here, the circumstantial and direct evidence proves appellant was a principal in the second degree to both larceny and breaking and entering. A principal in the second degree is one who was present at the scene and shared the criminal intent of the actual perpetrator or committed some act in furtherance of the offense. Allard v. Commonwealth, 24 Va. App. 57, 62, 480 S.E.2d 139, 141 (1997). A principal in the second degree may be "punished . . . as if a principal in the first degree." Code § 18.2-18.

"'Mere presence when a crime is committed is . . . not sufficient to render one guilty as an aider or abettor.'" Foster v. Commonwealth, 179 Va. 96, 99, 18 S.E.2d 314, 316 (1942) (quoting Brown v. Commonwealth, 130 Va. 733, 736, 107 S.E. 809, 810 (1921)). However, "'"[e]very person who is present at the commission of a [crime], encouraging or inciting the same by words, gestures, looks or signs, or who in any way, or by any means, countenances or approves the same is, in law,

-

assumed to be an aider and abettor . . . ."'" Id. at 99, 18

S.E.2d at 315-16 (quoting Brown, 130 Va. at 736, 107 S.E. at

810) (other citation omitted).  One who is "a watcher around the

corner" is an aider and abettor.  Id. at 99, 18 S.E.2d at 315.

Furthermore,

> "proof that a person is present at the
> commission of a crime without disapproving
> or opposing it, is evidence from which, in
> connection with other circumstances, it is
> competent for the [fact finder] to infer
> that he assented thereto, lent to it his
> countenance and approval, and was thereby
> aiding and abetting the same."

Id. at 100, 18 S.E.2d at 316 (citation omitted) (emphasis

added).

We applied these principles in Pugliese, 16 Va. App. at 94,

428 S.E.2d at 25, to hold that "the facts and circumstances

leading up to and after the crimes were sufficient to prove [the

defendant's] participation" as a principal in the second degree

to the charged crimes of robbery and murder.  In Pugliese, the

evidence established that the perpetrator told the defendant

prior to the crime "that he intended to 'hustle' [the victim]

out of his money" and that the defendant, instead of

discouraging the perpetrator or reporting him to the

authorities, accompanied the perpetrator to the scene.  Id.

After the victim was shot, the defendant aided in removing

> more than twelve hundred dollars from [the
> victim's] van; . . . personally drove the
> [victim's] van to a location where he and
> the others removed [the victim's] valuables,

-

> of which [the defendant] received a share;
> . . . personally helped [torch] the van[;]
> . . . [and] used his share of the money from
> the robbery/murder to purchase drugs. [The
> defendant] did nothing to prevent [the
> perpetrator] from robbing or murdering [the
> victim]; he did not report the
> robbery/murder after it occurred; and when
> questioned about the crimes, he falsified
> having any knowledge about them.

Id. Thus, we held, "the jury reasonably could have concluded from the facts that [the defendant] knew beforehand of [the perpetrator's] criminal intent and, because he assisted in disposing of the van and received part of the proceeds of the robbery/murder, that he shared [the perpetrator's] criminal intention." Id. at 94-95, 428 S.E.2d at 25.

In appellant's case, no evidence established that Toney or Greer formed the intent to commit a breaking and entering or larceny before they arrived at Jim Wood's Barber Shop. However, once the group arrived there, Toney's actions made clear his intent, and appellant made no attempt to distance himself from Toney's illegal acts. Toney tried to open the barbershop door with "his license or something" and, when he was unsuccessful, he "busted" the door open with a log. Appellant was present while these unlawful acts occurred, he did not attempt to dissuade Toney from breaking the law, and he made no effort to leave the scene. The evidence also supported the inference that appellant remained "next to the door" for at least a minute while Toney and Greer went inside the barbershop, despite the

-

fact that Moneymaker began to leave the scene.  When Toney and Greer exited the barbershop with several pairs of clippers and ran across the parking lot to the woods, appellant ran with them rather than away from them.  While Toney and Greer stole additional items out of a car and a van in a nearby parking lot, appellant waited in the woods near where the stolen clippers lay on the ground.  Appellant then left the woods with Toney and Greer and received three pair of the stolen clippers on the day following the break-in and theft.  Finally, when questioned by police about the crimes, appellant at first denied any involvement.

Thus, in appellant's case, as in Pugliese, the circumstances surrounding the crimes, both before they began and after they were completed, were sufficient to support a finding that appellant shared the criminal intent of the actual perpetrators, Toney and Greer.  Although no evidence established that appellant was aware of any intent Toney and Greer may have had to commit the breaking and entering and larceny before the group arrived at the barbershop that night, appellant had ample time to distance himself from the offenses once the break-in attempt began.  Instead of doing so, however, he remained directly "next to the door" as Toney and Greer entered and remained with them as they committed several additional offenses.  Thus, as in Pugliese, the evidence was sufficient to support appellant's conviction as a principal in the second

-

degree for the breaking and entering and larceny offenses committed by Toney and Greer.  See also Whitbeck v. Commonwealth, 210 Va. 324, 170 S.E.2d 776 (1969) (rejecting defendant's claim that he was merely present in back seat of get-away car while his two companions engaged in "a planned crime swing through Virginia, burglarizing places of business as they went").

For these reasons, we hold the evidence was sufficient to support appellant's statutory burglary and grand larceny convictions, and we affirm.

Affirmed.