COURT OF APPEALS OF VIRGINIA

Present:   Judges Athey, Ortiz and Chaney
Argued at Norfolk, Virginia


LEONARD WISTA NAJACQUE

MEMORANDUM OPINION* BY
v.      Record No. 0845-23-1      JUDGE DANIEL E. ORTIZ
AUGUST 20, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Carl E. Eason, Jr., Judge

Kelsey Bulger, Senior Appellate Attorney (Virginia Indigent Defense
Commission, on briefs), for appellant.

Tanner M. Russo, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Code § 40.1-103(A) proscribes conduct by a person with custody of a child that

endangers a child's life, injures the health of a child, or treats a child cruelly.  Repeated sexual

abuse leading a child to contract a sexually transmitted infection ("STI"), express physical pain,

and suffer from depression and isolation constitutes cruel treatment of a child under this statute.

We thus affirm Leonard Najacque's convictions for five counts of child cruelty, after the

evidence showed that he repeatedly fondled and penetrated A.N., his daughter, beginning when

she was seven and extending over several years, leading her to contract an STI and to suffer

serious emotional pain and suffering.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

The underlying allegations stretch back almost a decade. A.N. was born in 2006, in Haiti. When she was about two, she moved to Hampton, Virginia, to live with her father, Leonard Najacque. She later moved to a house on St. James Avenue in Suffolk, along with Najacque and several other family members.

In spring 2014, when A.N. was seven, Najacque called her downstairs to his bedroom, told her to lay on the bed and take off her top, and fondled her breasts. He then made her take her pants and underwear off and placed his finger in her vagina.

Sometime later that year, Najacque again called A.N. to his bedroom, where he fondled her breasts and gave her a "tongue kiss." He then made her undress and penetrated her vagina with his penis. When A.N. told Najacque she was hurting, he said that "it w[ould] be over soon." He ejaculated into a condom, then left the room, leaving A.N. to dress herself and return upstairs.

Throughout A.N.'s childhood, Najacque would leave town to visit Haiti or to work in other states for weeks or months at a time. But A.N. testified at trial that when he was at home "[t]hose exact things happened" one to two times a week.

In December 2016, A.N.'s family moved to a different apartment in Suffolk. Again, Najacque performed sexual acts on A.N., including "mainly intercourse, touching and kissing" as well as making A.N. touch his penis and nipples. This happened one or two times a week when Najacque was in town, for the brief time they lived in that apartment.

---

[1] Najacque was charged by a grand jury with 30 counts of sexual offenses against his daughter, A.N., and 6 counts of child cruelty. A jury acquitted Najacque of all charges except five counts of child cruelty. He now appeals the child cruelty convictions.

On appeal, we review the facts in "the light most favorable to the Commonwealth, the prevailing party at trial" as to the child cruelty charges. *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)).

In January 2017, A.N.'s family moved to Wellons Street, still in Suffolk. A.N. was ten years old. Najacque again fondled A.N.'s breasts and touched her vagina, made her touch his penis and nipples, kissed her, and penetrated her. Najacque also put his penis in her mouth once. A.N. testified that these encounters occurred two or three times per week.

When A.N. was in sixth grade, in fall 2017, her family moved to a different house on St. James Avenue, where they lived for about a year. Two or three times a week, Najacque touched A.N.'s breasts and vagina, made her touch his penis, and penetrated her vagina with his penis—sometimes with a condom and sometimes without. A.N.'s younger sister once saw Najacque kissing A.N.

In about 2017, when A.N. was ten or eleven, A.N. wrote in her diary: "People act like they know me but they don't know I got raped every day by my dad . . . and get touched by [my cousin]. Help me." About that same time, Najacque made A.N. start to take birth control pills.

During the sexual abuse, Najacque generally would not say anything. But whenever A.N. told him that it hurt, he would say it would get better or be over soon. Najacque told A.N. that the abuse was a secret. She declined to report it because she felt ashamed and Najacque was her father. She became depressed and did not have many friends. Najacque prevented A.N. from seeing or talking to many friends, sometimes going through her phone and telling her not to talk to particular people.

In 2018, A.N. and her family moved in with her aunt, Jasna Najacque ("Jasna"). While they lived with Jasna, Najacque gave A.N. "tongue kisses" but did not otherwise abuse her. After becoming concerned about A.N., Jasna invited A.N. to the gym with her, and the two of them walked around the block. Jasna told A.N. she was safe and that Jasna was there to support her. At that point, A.N. told Jasna about what had happened to her. When Jasna confronted

Najacque about the abuse, he was "really shaky." She told him to move out of her house, which he did.

Jasna took A.N. to the hospital, where she tested positive for bacterial vaginosis and trichomoniasis. Trichomoniasis, an STI, is easily treated with antibiotics. A nurse examined her and found no physical injuries, though she testified that the absence of visible injuries was not unusual in sexual assault cases. At some point after A.N. reported her sexual abuse, she also received antidepressants and therapy.

In October 2020, a grand jury charged Najacque with 6 counts of rape of a child under 13 in violation of Code § 18.2-61, 18 counts of aggravated sexual battery under Code § 18.2-67.3, 6 counts of indecent liberties with a child under Code § 18.2-370, and 6 counts of child cruelty under Code § 40.1-103.[2] In February 2021, Najacque turned himself in to the police. That same month, Najacque tested negative for trichomoniasis.

Najacque told police officers that Jasna had coached A.N. to falsely accuse him of sexual abuse and that A.N. did not understand the meaning of the term "rape." At trial, he denied ever abusing A.N. He said that the accusations were "not [A.N.]'s word [sic]," meaning that Jasna and his ex-wife had told A.N. to accuse him. He said they encouraged A.N. to lie, stating that there was a "problem between [my ex-wife] and I and Jasna and I which I cannot explain to you

---

[2] The Commonwealth asserted that it brought one of each type of charge for each year during which A.N. suffered abuse, though it suggested that it could have brought many more charges based on the evidence that Najacque sexually assaulted A.N. multiple times per week when he was in town. The aggravated sexual battery charges included one count for touching A.N.'s breasts, one count for making A.N. touch Najacque's penis, and one general count for each year.

At trial, the Commonwealth nolle prossed a few charges because the testimony showed that A.N. lived in Hampton for one year represented in the indictments, narrowing the charges to 5 rapes, 15 aggravated sexual batteries, 5 indecent liberties charges, and 5 child cruelty charges.

right now."[3]  He also asserted that Jasna was his daughter, not his sister, contrary to her testimony.

Najacque admitted that he placed a tape recorder under A.N.'s bed.  He stated that he was concerned about A.N.'s new job working with Jasna to clean and care for a veteran named Nick.[4]  He suggested that A.N. might have a motive to falsely accuse Najacque because she liked the spending money she received from helping Nick and Najacque did not want her working.  He also planned to have A.N. move to Florida with him, which she did not want to do.

In rebuttal, A.N. testified that she had never had sexual intercourse with anyone but Najacque.  She also said that no one had forced her to accuse Najacque of abusing her.

A jury acquitted Najacque of all the rape, sexual battery, and indecent liberties charges, but convicted him of five counts of child cruelty under Code § 40.1-103(A).  He now appeals those child cruelty convictions.

ANALYSIS

Najacque's sole assignment of error is that the trial court erred in denying his motion to strike the child cruelty charges because the evidence was insufficient to prove that he caused or permitted A.N.'s life to be endangered or her health to be injured, or caused or permitted her to be overworked, tortured, tormented, mutilated, beaten, or cruelly treated.[5]  "On review of a

---

[3] Jasna similarly testified that she and Najacque were not close for reasons she did not want to disclose at trial.

[4] During his recorded police interview, which was entered into evidence, Najacque alleged that Nick was lying about being disabled in order to access government benefits.  He also suggested that Nick required sexual favors of the women he hired and may have been the source of A.N.'s sexually transmitted infection.  Jasna testified that A.N. never actually went to work for Nick because Najacque told Jasna that A.N. was too young to work.

[5] The Commonwealth argues that Najacque's sufficiency arguments are barred by Rule 5A:18 because his arguments on appeal are broader than those made before the trial court during his motion to strike.  Under Rule 5A:18, "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the

challenge to the sufficiency of the evidence, this Court 'will affirm the judgment unless the judgment is plainly wrong or without evidence to support it.'" *Kovalaske v. Commonwealth*, 56 Va. App. 224, 231 (2010) (quoting *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008)). Further, "[t]he weight which should be given to evidence and whether the testimony of a witness is credible are questions which the fact finder must decide." *Bridgeman v. Commonwealth*, 3 Va. App. 523, 528 (1986). Yet "[t]o the extent that statutory interpretation is necessary to resolve a particular sufficiency issue, this Court reviews that aspect de novo." *Eberhardt v. Commonwealth*, 74 Va. App. 23, 31 (2021). And "when a statute is ambiguous, 'the rule of lenity [directs] us to adopt a narrow construction, thus reducing exposure to criminal liability." *Wallace v. Commonwealth*, 79 Va. App. 455, 462 (2024) (en banc) (alteration in original) (quoting *Fitzgerald v. Loudoun Cnty. Sheriff's Off.*, 289 Va. 499, 508 (2015)). We first outline the possible grounds for conviction under Code § 40.1-103(A). Then, we evaluate whether the evidence was sufficient to support Najacque's convictions on the grounds of cruel treatment, concluding that the circuit court did not err in denying Najacque's motions to strike the charges.[6]

---

ruling, except for good cause shown or to enable this Court to attain the ends of justice." The objection must be both specific and timely. *Maxwell v. Commonwealth*, 287 Va. 258, 267-68 (2014). The Commonwealth argues that at trial, Najacque emphasized that sexual abuse did not "fit" within the child cruelty statute, pointing to its placement within the labor and employment section of the Code. On appeal, however, he points more to the absence of evidence that Najacque inflicted pain and suffering as required for a child cruelty conviction.

The Commonwealth reads Najacque's motion to strike argument too narrowly. At trial, Najacque briefly addressed each prong of Code § 40.1-103(A), focusing on the definitions of "tormented" and "cruelly treated." His overall argument—that Najacque's conduct here was not within the conduct prohibited by Code § 40.1-103(A)—was timely presented to the trial court with enough specificity to preserve the issue for appeal.

[6] Because we ultimately conclude that Najacque's behavior constitutes cruel treatment, we need not address whether the evidence was sufficient to support a conviction based on the other grounds listed in Code § 40.1-103(A). *See Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) ("[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))).

I.  Code § 40.1-103(A)

Code § 40.1-103(A) makes it illegal for a person "having the custody of any child willfully or negligently to cause or permit the life of such child to be endangered or the health of such child to be injured, . . . or to cause or permit such child to be overworked, tortured, tormented, mutilated, beaten or cruelly treated."[7]  The statute "covers a wide swath of criminal behavior (from mere endangerment to actual torture)."  *Barnes v. Commonwealth*, 47 Va. App. 105, 111 (2005).

Najacque argues that the evidence and the Commonwealth's stipulations required the Commonwealth to prove "cruel treatment" rather than any other option under the statute.  During arguments on the motion to strike, the Commonwealth stated,

> [I]n this case the victim testified that the defendant abused her over a long period of time, that he sexually abused her, not physically. We'll stipulate to that.  We'll, obviously, concede on that. However, . . . we can argue that that is treating someone cruelly. Starting to rape a child at seven years old, taking a child's virginity is arguably treating a child cruel. . . .  He also put the child on birth control at a very young age and that goes to cruelly treating a child.

Contrary to Najacque's assertion, the Commonwealth only conceded that Najacque did not physically abuse A.N.—eliminating any argument that Najacque "beat" her.  But the Commonwealth did not concede that Najacque did not cause A.N. any physical harm or otherwise injure her.  The jury instructions ruled out a conviction based on overworking, torture, torment, or mutilation.  We are thus left to weigh the evidence to determine whether it was

---

[7] The second clause of the statute, criminalizing conduct which "willfully or negligently . . . cause[s] or permit[s] such child to be placed in a situation that its life, health or morals may be endangered" was held unconstitutionally vague and overbroad in *Commonwealth v. Carter*, 21 Va. App. 150 (1995).

sufficient to show that Najacque caused or permitted (1) A.N.'s life to be endangered; (2) A.N.'s health to be injured; or (3) A.N. to be cruelly treated.[8]

In weighing the sufficiency of the evidence to prove these elements, we may not consider the apparent inconsistency that the jury convicted Najacque of child cruelty while acquitting him of rape, sexual battery, and taking indecent liberties based on facts that appear more similar to those charges. "Jury verdicts may appear inconsistent because the jury has elected through mistake, compromise, or lenity to acquit or to convict of a lesser offense for one charged crime that seems in conflict with the verdict for another charged offense." *Kovalaske*, 56 Va. App. at 233 (quoting *Pugliese v. Commonwealth*, 16 Va. App. 82, 96 (1993)). "Despite the apparent inconsistency of a verdict, courts may uphold inconsistent verdicts, provided that the evidence supports the verdict challenged on appeal." *Id.* In other words, we must look to all the evidence presented, in the light most favorable to the Commonwealth, and determine whether it makes out a case of child endangerment or child cruelty—no matter how the jury interpreted the evidence for the other charges. *See id.*; *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018).

II. Cruel Treatment of a Child

An individual may be convicted under Code § 40.1-103(A) if they "cause or permit [a] child to be . . . cruelly treated." "[T]he term 'cruelly treated,' as used in Code § 40.1-103, describes engaging in behavior toward another that causes physical or emotional pain or suffering in that other person." *Mollenhauer v. Commonwealth*, 73 Va. App. 318, 335 (2021). This Court has identified no bright-line test as to the level of harm or suffering necessary for a child cruelty conviction, and we do not proclaim one here. We do hold, however, that the

---

[8] In addition to proving the conduct at issue, the Commonwealth needed to prove that Najacque acted willfully or negligently. Because Najacque does not challenge any mens rea finding, instead arguing that his conduct did not fit in any category proscribed by the statute, we do not disturb the jury's finding that he acted willfully or negligently.

evidence here showed that Najacque's behavior caused sufficient physical and emotional pain and suffering to support his conviction.

Here, the evidence showed that Najacque—A.N.'s own father—repeatedly fondled A.N.'s breasts, penetrated her, and made her touch him inappropriately, multiple times a week when he was in town, over several years. A.N. was young—just seven years old when the abuse began. She testified that on at least two occasions she told Najacque that she was hurting, and he responded dismissively—saying that it would get better or be over soon. A.N. contracted an STI because of the abuse, requiring medical treatment. Further, Najacque's repeated and ongoing sexual assaults led A.N. to experience depression and isolation, such that she needed antidepressants and therapy. Taken together, this is sufficient to show that Najacque caused A.N. "physical [and] emotional pain or suffering." *Mollenhauer*, 73 Va. App. at 335. The repeated and ongoing nature of the abuse demonstrates its cruelty, creating suffering lasting over several years. We need not determine in this case whether emotional harm alone could support a child cruelty charge, or how severe the physical or emotional suffering must be to permit a conviction. We conclude, however, that in this case, the evidence was sufficient to support the jury's conclusion that Najacque caused or permitted A.N. to be cruelly treated.

CONCLUSION

Najacque challenges his convictions under Code § 40.1-103 for child cruelty—convictions based on the testimony of his daughter, A.N., that he repeatedly subjected her to sexual abuse over several years. Because the evidence showed that Najacque caused A.N. both physical and emotional pain through his repeated and prolonged sexual abuse, we conclude that the evidence supported a jury finding that he caused A.N. to be "cruelly treated." We therefore affirm his five convictions.

*Affirmed.*