## Richmond

LATNEY BUNDY

V.

## COMMONWEALTH OF VIRGINIA

November 21, 1979.

Record No. 790246.

Present: All the Justices.

486

*Lee W. Albrecht (Jonathan S. Lynn; Martin, Walker & Lawrence, P.C.,* on brief), for appellant.

*Jerry P. Slonaker, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

PER CURIAM.

In separate indictments, the defendant, Latney Bundy, was charged with the murder of Emily Parker, Code § 18.2-32, and with the "use [of] a rifle while committing murder," Code § 18.2-53.1. Tried by a jury on both indictments in a single trial, the defendant was convicted of voluntary manslaughter and of "the use of a firearm in the commission of a felony." Sentenced to 12 months in jail and 1 year in the penitentiary, respectively, the defendant is here on an appeal involving only his firearms conviction.

The record shows that on the evening of June 4, 1978, the defendant attended a dance at the "Music Note," a nightclub in Stafford County. There, he engaged with several others in a dice game outside the dance hall. At a point in the game, the defendant accused another participant, Ernest Pollard, of taking $10 of the defendant's winnings. When Pollard denied taking the money, the defendant said, "I know which road you are going to take and you are going to die tonight." The defendant left the game and drove away in his car.

Later, accompanied by Rosa Lee, Emily Parker, and Virginia Parker, Pollard left the dance and drove into Fauquier County en route to the Parker home. As the vehicle passed a fire tower, Rosa Lee saw the defendant's car "sitting back" in a side road a "few feet" from the tower. Then, "a shot was fired and it hit [the] rear tire on the left side" of the automobile operated by Pollard. A second shot

struck the rear of the car, travelled through the trunk and the rear seat, and struck Emily Parker. She was mortally wounded.

Police investigators discovered "an empty cartridge, a 30-30," in a mudhole in the side road where Rosa Lee had observed the defendant's automobile. Laboratory tests indicated that a bullet removed from the vehicle occupied by Emily Parker "could originally have been loaded" in the cartridge case.

On appeal, the sole question for decision is whether the defendant's firearms conviction is proper. As has been noted, the defendant was indicted for the use of a firearm while committing *murder*. The verdict returned by the jury, however, found the defendant guilty of the use of a firearm in the commission of a *felony*.

Construing the verdict returned by the jury as tantamount to a finding that he used a firearm while committing murder, the defendant contends that the verdict is invalid because it is "legally inconsistent" with the voluntary manslaughter verdict returned on the homicide indictment. The defendant says also that under the doctrine of collateral estoppel, as enunciated in *Ashe* v. *Swenson*, 397 U.S. 436 (1970), his acquittal of the underlying murder charge, inherent in his conviction of the lesser charge of voluntary manslaughter, is "binding" upon the Commonwealth and bars his conviction of the use of a firearm in the commission of murder.

■ We do not agree with the defendant, however, on the possible application of the concepts of legal inconsistency and collateral estoppel. These concepts could apply in any event only if the verdict on the weapons indictment is interpreted as a finding of guilt that the defendant used a firearm while committing murder. We cannot interpret the verdict in this manner. In plain and unambiguous language, the verdict states that the defendant is guilty of "the use of a firearm in the commission of a felony." It should be unnecessary to say that, while all murders are felonious, not all felonies are murders. The weapons verdict returned in this case, therefore, is a finding of guilt of an offense quite different from the offense of using a firearm while committing murder.

■ In an alternative argument, the defendant postulates that, at best, the weapons verdict constitutes a finding that he used a firearm in the commission of manslaughter or in the commission of some other undesignated felony. These matters, the defendant says, are "totally outside of what the Virginia legislature contemplated" in its enactment of the present weapons statute and, therefore, do not constitute criminal offenses.

We believe that the weapons verdict in this case, as we have pre-

viously noted, plainly convicts the defendant of the use of a firearm while committing, not murder, but some undesignated other felony. Under the weapons statute as it read prior to 1976, such a verdict might have been proper. At that time, Code § 18.2-53.1 read, in pertinent part, as follows:

> "It shall be unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing a felony."

In 1976, Code § 18.2-53.1 was amended to read, in pertinent part, as follows:

> "It shall be unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit murder, rape, robbery, burglary or abduction."

Thus, as a result of the 1976 amendment to Code § 18.2-53.1, the use of a firearm "while committing a felony" no longer is sufficient to constitute a violation of the statute. Now, a violation occurs only when a firearm is used with respect to the specified felonies of murder, rape, robbery, burglary, and abduction.

The offense in this case and the prosecution therefor took place after the effective date of the amendment to Code § 18.2-53.1. Yet, under instructions erroneously framed to permit such action, the jury was given free rein either to convict the defendant of the no-longer existing offense of using a firearm in the commission of a felony or to convict him of using a firearm while committing murder. The jury convicted the defendant of the non-existent offense. Clearly, therefore, the defendant's firearms conviction must be reversed.

The erroneous instructions which led to the anomalous result reached below were granted, if not at the Commonwealth's request, in the absence of any objection. These instructions became the law of the case. Accordingly, we do not believe that the Commonwealth is entitled further to prosecute the defendant on the weapons indictment, and it will be dismissed.

*Reversed and dismissed.*