**Salem**

ROBERT LEE WOLFE

v.

COMMONWEALTH OF VIRGINIA

No. 0707-86-3

Decided August 2, 1988

COUNSEL

Horace F. Sutherland, for appellant.

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, C.J.** — Robert Lee Wolfe was indicted and tried for murder and use of a firearm during the commission of murder. The jury found Wolfe guilty of the lesser included offense of voluntary manslaughter and use of a firearm in the commission of murder, in violation of Code § 18.2-53.1. In this appeal we decide (1) whether Wolfe's failure to file a trial transcript or statement

of facts mandates that his appeal be dismissed, and (2) whether on the record before us Wolfe's conviction for use of a firearm in the commission of murder is barred by the jury's determination that he was guilty of voluntary manslaughter. We hold that the issue raised by Wolfe is capable of resolution without a transcript or statement of facts and, for the reasons that follow, affirm his firearm conviction.

When Wolfe filed a notice of appeal, he failed to file a trial transcript or statement of facts. The Commonwealth filed a motion to dismiss this appeal on the ground that a transcript or statement of facts is indispensable to the disposal of the issue of whether the jury's determination that Wolfe was guilty of voluntary manslaughter rather than murder barred his conviction for use of a firearm in the commission of murder. After granting Wolfe's petition for appeal, this Court overruled the motion to dismiss on the ground that we could not determine, prior to hearing the case on the merits, whether a transcript was essential to the resolution of the issue. We address this issue at this time.

■ As a threshold matter, we must determine whether the issue was raised and preserved below. Pursuant to Rule 5A:18, a ruling of a trial court will not be considered as a basis for reversal unless an objection and the grounds therefore are stated at the time of the ruling. Thus, we will not consider an issue on appeal unless an objection is stated with reasonable certainty, except for good cause shown or to enable us to attain the ends of justice. The purpose of this rule is self-evident. Any potential error should be brought to the trial court's attention so that the court may consider the issue and take corrective action to avoid unnecessary appeals, reversals and mistrials. *Woodson v. Commonwealth*, 211 Va. 285, 288, 176 S.E.2d 818, 820 (1970), *cert. denied*, 401 U.S. 959 (1971).

The record filed in this case, albeit without a transcript or statement of facts, indicates that the trial court entered an order on April 25, 1986, delaying entry of judgment. The order provided: "The attorney for the defendant [Wolfe] then moved the Court to set aside the verdict, for the reasons stated to the record, which motion was taken under advisement by the Court . . . ." The Commonwealth filed a memorandum in response to Wolfe's motion to set aside the verdict on May 5, 1986. It may be gleaned from this memorandum that Wolfe's motion to set aside the ver-

dict was based upon an alleged inconsistency between the verdicts of voluntary manslaughter and use of a firearm in the commission of murder. Wolfe filed a memorandum in response to the Commonwealth's memorandum. From this document, it is clear that Wolfe argued that because he was found guilty of voluntary manslaughter, instead of murder, and because manslaughter is not one of the enumerated crimes in Code § 18.2-53.1, the jury could not properly find him guilty of use of a firearm in the commission of murder. The final order reflects that a hearing was held on June 2, 1986, to determine the merits of Wolfe's motion. The trial court overruled the motion.

We believe the purposes of Rule 5A:18 have been fulfilled, and the record establishes that the issue Wolfe raises was properly preserved for appellate review. The April 25 court order indicates that Wolfe's trial counsel moved to set aside the verdict, and the memoranda officially received and filed by the clerk of the trial court pertaining to Wolfe's motion clearly show that the issue was addressed and considered by the trial court. Thus, Wolfe's motion to set aside the verdict shows his objection to the form of the verdict.

We now turn to whether a transcript or statement of facts is necessary to decide the issue presented. "The importance of the record is obvious, for it is axiomatic that an appellate court's review of the case is limited to the record on appeal." *Turner v. Commonwealth*, 2 Va. App. 96, 99, 341 S.E.2d 400, 402 (1986). "If . . . the transcript is indispensable to the determination of the the case, then the requirements for making the transcript a part of the record on appeal must be strictly adhered to." *Id.* However, the filing of a transcript is not mandatory under the rules, and the failure to file a transcript does not remove our jurisdiction. "If the record on appeal is sufficient in the absence of the transcript to determine the merits of the appellant's allegation, we are free to proceed to hear the case." *Id.*

The record filed in this appeal contains, *inter alia*, the following: the indictment listing the offense for which Wolfe was charged; the jury verdict form, indicating the jury found Wolfe guilty of use of a shotgun to commit murder; the jury instructions; and the trial court's final order entering judgment. It is apparent from the documents contained in the record that Wolfe was convicted of voluntary manslaughter, and the Commonwealth readily

concedes this fact. We therefore believe the record is sufficient to determine the merits of this appeal. We emphasize that our decision to review this case without a trial transcript or statement of facts is the rare exception rather than the general rule. The trial transcript usually is indispensable. However, we believe the issue presented by Wolfe is capable of resolution without a transcript. We therefore address the merits of the appeal.

■ In *Kuckenbecker v. Commonwealth*, 199 Va. 619, 101 S.E.2d 523 (1958), the Supreme Court held: "[T]he conviction of the accused of the lower offense of voluntary manslaughter is an acquittal of the higher offenses of first and second degree murder." *Id.* at 623, 101 S.E.2d at 526. Relying primarily on that decision, Wolfe argues, as a matter of law, that because the jury found him guilty of voluntary manslaughter, it acquitted him of murder; therefore, the jury could not then find him guilty of use of a firearm in the commission of murder.[1] Wolfe further argues that this is so because use of a firearm in the commission of voluntary manslaughter is not an enumerated crime in Code § 18.2-53.1. The Commonwealth argues in response that murder and use of a firearm in the commission of murder are independent and distinct offenses, that the firearm charge does not require a conviction of the murder charge, and that consequently the firearm conviction may stand even though Wolfe was found guilty of voluntary manslaughter rather than murder.

■ Code § 18.2-53.1 provides, in pertinent part: "It shall be unlawful for any person to use . . . any pistol, shotgun, rifle, or other firearm . . . while committing or attempting to commit murder, rape, robbery, burglary, malicious wounding . . . or abduction. Violation of this section shall constitute a separate and distinct felony . . . ." A violation of this section "occurs only when the firearm is used with respect to the specified felonies of murder, rape, robbery, burglary, [malicious wounding or] . . . abduction." *Bundy v. Commonwealth*, 220 Va. 485, 488, 259 S.E.2d 826, 828 (1979).

---

[1] *See also* Code §§ 19.2-266.1 and 19.2-285, permitting the jury to find the accused guilty of any degree of homicide supported by the evidence and in the event of a new trial, prohibiting the accused from being tried for any higher offense than that of which he was convicted on the last trial.

The apparent conflict between Wolfe's acquittal of murder and his conviction of use of a firearm in the commission of murder must be analyzed and resolved in the procedural context in which they arose in this particular case. It is particularly significant that Wolfe was tried without objection in a single criminal jury trial on both the murder charge and the charge of use of a firearm in the commission of murder.[2] We further note that Wolfe did not seek a cautionary instruction that if the jury acquitted him of murder, they should then find him not guilty of use of a firearm in the commission of murder. Obviously there are sound tactical reasons why an accused would not desire such an instruction and thus permit the jury to show leniency in convicting him of a lesser included offense of the primary felony; i.e., in this case voluntary manslaughter rather than murder. Finally, we note that Wolfe was in fact found guilty of use of a firearm in the commission of murder and not use of a firearm in the commission of voluntary manslaughter, the latter not being a criminal offense under Code § 18.2-53.1.

While not specifically argued by Wolfe, the fact that he was tried in a single criminal jury trial for murder and use of a firearm in the commission of murder eliminates a double jeopardy argument. Because double jeopardy concerns are closely related to the issue presented in this appeal, we briefly address them in our analysis of Wolfe's arguments. "The constitutional prohibition of double jeopardy consists of three separate guarantees: '(1) It protects against a second prosecution for the same offense after acquittal. (2) It protects against a second prosecution for the same offense after conviction. (3) And it protects against multiple punishments for the same offense.' " *Turner v. Commonwealth*, 221 Va. 513, 529, 273 S.E.2d 36, 46 (1980)(quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)), *rev'd on other grounds*, 476 U.S. 28 (1985). The first two constitutional guarantees are not relevant because Wolfe was tried in a single trial; no second prosecution occurred. The issue of the guarantee against multiple punishments is eliminated by the holding in *Turner* that the General Assembly clearly indicated its intent to impose multiple punish-

---

[2] In *Davis v. Commonwealth*, 4 Va. App. 27, 31, 353 S.E.2d 905, 907 (1987), we held that while the underlying felony must be proved beyond a reasonable doubt, to obtain a conviction for a violation of Code § 18.2-53.1 it is not necessary to separately indict and prosecute the underlying felony. Thus, it is not required that one jury trial be employed to prosecute a charge under Code § 18.2-53.1 and the underlying felony.

ments for capital murder and use of a firearm in the commission of a felony pursuant to Code § 18.2-53.1. *Id.* at 530, 273 S.E.2d at 47; *see also Peterson v. Bass*, 2 Va. App. 314, 319-20, 343 S.E.2d 475, 479 (1986). For purposes of this issue, we perceive no distinction between charges of capital murder and murder.

The fact that Wolfe was tried in a single criminal jury trial also eliminates collateral estoppel concerns. The doctrine of collateral estoppel is closely related to the issue raised by Wolfe; while mentioned in his petition for appeal, it was not pursued on brief or at oral argument. " 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). The United States Supreme Court in *Ashe* further held that this doctrine is embodied in the fifth amendment guarantee against double jeopardy. *Id.* at 445.

Recognizing this constitutional guarantee, the Virginia Supreme Court likewise has held that "the doctrine of collateral estoppel is a constitutional requirement embodied in the fifth amendment protection against double jeopardy and is applicable to the states through the fourteenth amendment to the United States Constitution." *Simon v. Commonwealth*, 220 Va. 412, 415, 258 S.E.2d 567, 569 (1979). The doctrine of collateral estoppel has not been held, and we believe properly so, to be applicable where two charges are tried in a single criminal jury trial. The statement of the doctrine itself contemplates a second trial in that an "issue cannot *again* be litigated between the same parties in any *future* law suit." *Ashe*, 397 U.S. at 443.

In *Bundy v. Commonwealth*, 220 Va. 485, 259 S.E.2d 826 (1979), the defendant was tried in a single criminal jury trial on charges of murder and use of a firearm while committing murder. He was convicted of voluntary manslaughter and use of a firearm in the commission of a "*felony.*" The defendant argued that under the doctrine of collateral estoppel his acquittal of the underlying murder charge, inherent in his conviction of the lesser charge of voluntary manslaughter, barred his conviction of the use of a firearm in the commission of murder. The Supreme Court rejected

this argument, finding that the defendant was not found guilty of use of a firearm in the commission of murder but rather of use of a firearm in some undesignated felony. Because of the 1976 amendment to Code § 18.2-53.1, such undesignated felony no longer constituted a violation of the statute, and the defendant's conviction was reversed and dismissed.

In *Bundy*, the following language is found which may have caused confusion but which we do not believe contradicts our belief that the doctrine of collateral estoppel is not applicable to a single jury trial: "We do not agree with the defendant, however, on the possible application of the concepts of legal inconsistency and collateral estoppel. These concepts could apply in any event only if the verdict on the weapons indictment is interpreted as a finding of guilt that the defendant used a firearm while committing murder." *Id.* at 487, 259 S.E.2d at 827. While this statement refers to both the concept of legal inconsistency and the doctrine of collateral estoppel, we believe it was primarily intended to address the issue of inconsistency that the court found not to exist on the facts in *Bundy*. In *Bundy*, the jury in fact found the defendant guilty of use of a firearm in the commission of some felony other than murder and therefore no inconsistency was involved. Furthermore, in expressing disagreement with the application of both concepts to the facts in *Bundy*, we believe the Court implicitly was referring to the fact that a single criminal jury trial was a bar to the application of the doctrine of collateral estoppel.

Finally, the fact that Wolfe was tried on both charges in a single criminal jury trial is significant because it is the basis of the apparent inconsistency of the jury verdicts in this case. Subsequent to the Virginia Supreme Court's decision in *Bundy*, the United States Supreme Court addressed the issue of legal inconsistency in the case of *United States v. Powell*, 469 U.S. 57 (1984). The Court unanimously reaffirmed its prior decision in *Dunn v. Commonwealth*, 284 U.S. 390 (1932), that a criminal defendant convicted by a jury on one count could not attack that conviction because it was inconsistent with the jury's verdict of acquittal on another count.

" 'The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the ac-

quittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.' " *Powell*, 469 U.S. at 63 (quoting *Dunn*, 284 U.S. at 393). The *Powell* Court further explained that juries may reach inconsistent verdicts through mistake, compromise, or lenity, but in such instances it is "unclear whose ox has been gored," the government's or the defendant's. *Id.* at 65. For this reason and the fact that the government is precluded from appealing the acquittal verdict, the Court concluded that inconsistent verdicts should not provide the basis for an appeal by the defendant. *Id.* at 66.

Significantly, the *Powell* Court noted that, unlike the doctrine of collateral estoppel, the issue of inconsistent verdicts implicates no constitutional guarantee. It also noted that the doctrine of collateral estoppel is not applicable to single jury trials. Accordingly, on the issue of inconsistency, the states are free to formulate their own rules.

With this background we turn now to Wolfe's argument that his conviction of voluntary manslaughter is an acquittal of murder and that consequently he may not be found guilty of use of a firearm in the commission of murder. While he disclaims that he relies on the concept of inconsistent verdicts, it is difficult to separate that concept from the argument he advances. In our view, the inconsistency in the verdicts is palpable. If Wolfe did not commit murder, logically he should be found not guilty of use of a firearm in the commission of murder. However, the logic of the jury verdict is not the issue. The issue is whether an illogical jury verdict constitutes grounds for reversal in this case.

We have gone to some length in this opinion, even without the desired transcript, to analyze the issue raised by Wolfe because we believe the issue is likely to reoccur, is significant, and has little Virginia precedent to guide its resolution. In *Sullivan v. Commonwealth*, 214 Va. 679, 204 S.E.2d 264 (1974), the Virginia Supreme Court was presented with apparent inconsistent jury verdicts. In a single criminal jury trial, Sullivan was found guilty of conspiracy to commit grand larceny but not guilty of conspiracy to commit burglary arising from the same transaction. The court, in a *per curiam* opinion, affirmed the trial court's refusal to set aside the guilty verdict. The Court assumed, without deciding, that the verdicts were inconsistent, but relying on *Dunn*, held that on the facts consistency in the verdicts was not required. *Sullivan*

was decided prior to *Powell.*

In *Sullivan* the court, unlike our position in the present case, had the benefit of and the opportunity to review the facts in the trial record. Furthermore, in the present case to properly convict Wolfe of use of a firearm in the commission of murder, the Commonwealth was required to prove the elements of murder beyond a reasonable doubt. *Davis*, 4 Va. App. at 31, 353 S.E.2d at 907. In *Sullivan*, the charges of conspiracy to commit burglary and conspiracy to commit grand larceny did not involve a mutuality of the elements of the criminal offense for which the accused was charged. Thus, *Sullivan* can be interpreted as authority for the proposition either that consistency of verdicts is not required or that the appellate courts should review allegations of inconsistency of verdicts to determine whether inconsistency, in fact, does inhere in the verdicts. We believe the former is the better view.

The settled rule in Virginia that a conviction of the lesser offense of voluntary manslaughter is an acquittal of murder forms the basis for Wolfe's argument that his conviction of use of a firearm in the commission of murder is inconsistent with his conviction of voluntary manslaughter. The requirement that the Commonwealth prove beyond a reasonable doubt the elements of the underlying felony of murder to properly convict him of use of a firearm in the commission of murder also is part of his argument that his conviction of use of a firearm in the commission of murder is inconsistent with his conviction of voluntary manslaughter rather than murder in a single criminal jury trial. As noted in *Powell*, however, this argument assumes that the acquittal of murder was logical, i.e. supported by the evidence, rather than that the conviction for use of a firearm in the commission of murder was logical. In this context, particularily without the benefit of facts in the trial record, all that can be said is that an inconsistency clearly exists. The issue then becomes what, if any, significance this inconsistency has in the context of *Sullivan.*

Viewing *Sullivan* in light of *Powell*, we conclude that *Sullivan* is in accord with the reasoning of *Powell* and hold that all that can be said about the inconsistency in the verdicts in Wolfe's case is that the jury by mistake, compromise, or lenity, illogically found Wolfe not guilty of the primary felony of murder but nevertheless guilty of the underlying felony of use of a firearm in the commission of murder. Obviously without a transcript or state-

ment of facts, it is impossible to conclude whether Wolfe or the Commonwealth benefited from the inconsistency. The sufficiency of the evidence as to either conviction is not before us. Furthermore, we are not persuaded that the Virginia Supreme Court, based on *Sullivan*, has adopted the view that the appellate courts should search the trial record in an attempt to reconcile otherwise apparent inconsistency in verdicts rendered in a single jury trial.[3] Furthermore, we believe the reasoning of *Powell* is the better view and thus a search of the trial record in an attempt to reconcile such inconsistency is neither appropriate nor required.

In summary, we hold that neither principles of double jeopardy nor collateral estoppel are applicable in this single criminal jury trial, and that Wolfe's argument which in reality amounts to an argument of inconsistency of verdicts, does not bar his conviction of use of a firearm in the commission of murder. For these reasons, his conviction is affirmed.

*Affirmed.*

---

[3] Nothing in this opinion is intended to address inconsistent verdicts rendered by a trial judge in a single criminal trial. Further, we do not believe the principles stated herein are applicable to such cases. *See Shell v. State*, 307 Md. 46, 512 A.2d 358 (1986).