BENTON, Judge,
dissenting.
The trial judge convicted Brenda Parker of a criminal misdemeanor offense for violating a statute that does not designate the prescribed conduct as a criminal offense. I would reverse the conviction and dismiss the warrant.
I.
The record established that a misdemeanor summons charged Brenda Parker with “unlawfully [o]perat[ing] a food manufacturing plant without it having been inspected by the *390 Commissioner [of Agriculture] ... in violation of [Code § ] 3.1-398.1.” In pretrial motions and argument, Parker’s attorney contended that a criminal misdemeanor charge could be imposed only if the judge “read[s] [Code § ] 3.1-398.1 with [Code § ] 3.1-418.” He moved the judge to dismiss the warrant and argued that no criminal offense existed because the indictment did not allege a demand for inspection. See Code § 3.1-418 (providing, in pertinent part, that “[a]ny ... person who refuses to comply upon demand with the requirements of Chapter 20 (§ 3.1-361 et seq.) ... shall be guilty of a misdemeanor”). The prosecutor responded that Code § 3.1-418 was not implicated because “[Parker is] not charged under that.” The judge, confirming the prosecutor’s statement, then ruled, “She’s not charged with that,” and denied the motion. The prosecutor’s statement and the judge’s ruling unambiguously established that Parker’s trial encompassed no more than the conduct alleged in the warrant and the application of Code § 3.1-398.1.
At the conclusion of the Commonwealth’s evidence, the judge found the following facts in overruling Parker’s motion to strike the evidence:
So the fact that she refused an inspection was not the thrust of what the officers are doing. What they want to find out is about her operation and explain to her she needs to be inspected before she can proceed. If it was simply the failure to inspect that they were [alleging] to let them in, then they wouldn’t have dropped it, because any violation that occurred had already occurred.
The judge convicted Parker of violating Code § 3.1-398.1 and later entered a conviction order that provides as follows:
This day came the defendant, Brenda Parker, ... who stands charged with a misdemeanor, to-wit: “Operate a food manufacturing plant without it having been inspected by the Commissioner”....
After hearing argument of counsel, the Court finds the defendant GUILTY of the following offense:
*391 CASE NO. OFFENSE DESCRIP. OFFENSE VA CODE DATE SECT.
02-35 Operate Food Manufact. 08-04-01 3.1-398.1 Plant without it having been inspected by Comr.
The Court sentences the defendant to:
Incarceration in jail for the term of 30 days.
A fine of $100.00
II.
Code § 3.1-398.1 does not encompass or charge a substantive criminal offense. The entire text of the statute provides as follows:
No person shall operate a food manufacturing plant, food storage warehouse, or retail food store until it has been inspected by the Commissioner. This section shall not apply to food manufacturing plants operating under a grant of inspection from the Bureau of Meat and Poultry Inspection or a permit from the Bureau of Dairy Services of the Virginia Department of Agriculture and Consumer Services and Grade A fluid milk manufacturing plants and shellfish and Crustacea processing plants operating under a permit from the Virginia Department of Health.
Code § 3.1-398.1.
Courts do not have the power to prescribe conduct as criminal where the legislature has not specified by statute that the conduct is criminal. Indeed, we have previously held that the absence of a statutorily prescribed penalty prevents a trial judge from imposing a penalty.
“[A] crime is made up of two parts, forbidden conduct and a prescribed penalty. The former without the latter is no crime.” Criminal penalties “should be provided with that degree of clarity that characterizes all criminal law, to the end that its application must not be left to conjecture.” If a criminal statute or ordinance does not specify a penalty, it is beyond our province to prescribe one on the assumption that the deficiency was simply an “oversight.” “Defining crimes and fixing penalties are legislative, not judicial, functions.”
*392 Cook v. Commonwealth, 20 Va.App. 510, 513, 458 S.E.2d 317, 319 (1995) (citations omitted). Thus, we reversed the conviction in Cook because the “[defendant was ... convicted for conduct which constituted no crime.” 20 Va.App. at 514, 458 S.E.2d at 319.
Although Virginia statutorily recognizes some common law crimes by reference and specifically prescribes punishment for those common law crimes, operating a food manufacturing plant that has not been inspected is not a common law crime. Significantly, the Commonwealth points to no statute, which provides, either explicitly or by reference, that a violation solely of the provisions of Code § 3.1-398.1 constitutes a criminal offense. Indeed, at trial, the prosecutor explicitly denied relying on any other statute, especially eliminating Code § 3.1-418, and sought a conviction upon proof that Parker violated only the prohibitions of Code § 3.1-398.1. The conviction order only references Code § 3.1-398.1. This statute, however, is part of a general administrative scheme to regulate food and drinks. See Chapter 20 (Code § 3.1-361 et seq.). Within this statutory scheme, the legislature has provided various civil remedies that may be enforced when a person violates a duty proscribed by the statutes. See, e.g., Code § 3.1-398 (authorizing the Board “to promulgate regulations for the efficient enforcement of this article”); Code § 3.1-408 (authorizing seizure of food and products produced or held in violation of the statutes); Code § 3.1-411 (authorizing forfeiture of food and goods). See also Code § 3.1-389 (providing, in addition to other remedies, authorization to the Commissioner to seek a temporary or permanent injunction for persons violating the statutory prohibitions).
A general characteristic of administrative law is the existence of civil remedies for violations of duties imposed by administrative statutory schemes. See Kissinger v. Reporters Committee, 445 U.S. 136, 148-49, 100 S.Ct. 960, 967, 63 L.Ed.2d 267 (1980) (holding that legislatures do enact statutes with language that “merely ‘proscribes certain conduct’ ” with the intent of “providing] administrative remedies for violation of the [statutory] duty”); Volkswagen of America, Inc. v. *393 Smit, 266 Va. 444, 448, 587 S.E.2d 526, 529 (2003) (describing a provision of the Motor Vehicle Dealers Act that makes “unlawful” a car distributor’s failure to allocate monthly to the dealer the appropriate number of new vehicles and that requires the Commissioner of the Department of Motor Vehicles to make a finding of the distributor’s method of allocation at the dealer’s request). Similar to a myriad of other statutes, Code § 3.1-398.1 proscribes conduct that, when violated, may give rise to a civil enforcement. See e.g., Code § 51.5-41 (barring as a civil prohibition an “employer [from] discriminat[ing] in employment or promotion practices against an otherwise qualified person with a disability solely because of such disability”); Code § 40.1-51.4:4 (rendering as a civil prohibition that “it shall be unlawful for any law-enforcement agency as defined in [Code] § 9.1-500 ... to require any employee to submit to a lie detector test ... except ... [when] related to a particular internal administrative investigation concerning allegations of misconduct or criminal activity”); Code § 38.2-4312 (requiring as a regulatory practice that “[n]o health maintenance organization or its representative may cause or knowingly permit the use of ... advertising that is untrue or misleading....”).
In summary, Code § 3.1-398.1 is a part of an administrative regulatory scheme and the express language of Code § 3.1-398.1 does not create a substantive criminal offense. Therefore, the trial judge did not have the authority to adjudicate a violation of Code § 3.1-398.1 as a criminal offense.
III.
Because the legislature did not create Code § 3.1-398.1 to be a criminal statute without reference to some other conduct, the trial judge exceeded his power when he convicted Parker of a misdemeanor criminal offense. On several occasions, the Supreme Court has reversed criminal convictions of defendants for non-existent offenses. In Bundy v. Commonwealth, 220 Va. 485, 259 S.E.2d 826 (1979), the Court ruled as follows:
*394 We believe that the weapons verdict in this case ... plainly convicts the defendant of the use of a firearm while committing, not murder, but some undesignated other felony. Under the weapons statute as it read prior to 1976, such a verdict might have been proper.
ífc í¡í $ H* # *
[A]s a result of the 1976 amendment to Code § 18.2-53.1, the use of a firearm “while committing a felony” no longer is sufficient to constitute a violation of the statute. Now, a violation occurs only when a firearm is used with respect to the specified felonies of murder, rape, robbery, burglary, and abduction.
The offense in this case and the prosecution therefor took place after the effective date of the amendment to Code § 18.2-53.1. Yet, under instructions erroneously framed to permit such action, the jury was given free rein either to convict the defendant of the no-longer existing offense of using a firearm in the commission of a felony or to convict him of using a firearm while committing murder. The jury convicted the defendant of the non-existent offense. Clearly, therefore, the defendant’s firearms conviction must be reversed.
Id. at 487-88, 259 S.E.2d at 828. See also Jimenez v. Commonwealth, 241 Va. 244, 251, 402 S.E.2d 678, 681 (1991) (reversing a conviction because the judge’s “instruction omitted some essential elements of the offense” and permitted the jury to convict Jimenez “of a non-offense”); Ball v. Commonwealth, 221 Va. 754, 758-59, 273 S.E.2d 790, 793 (1981) (reversing a conviction for capital murder because the evidence proved a homicide during an attempted robbery, which was not then one of the statutorily defined predicate offenses of capital murder); Marshall v. Commonwealth, 26 Va.App. 627, 637, 496 S.E.2d 120, 125 (1998) (noting that “we would be permitted to invoke the ends of justice exception to reverse ... a conviction for a non-existent offense”).
*395 Simply put, a circuit court lacks the power to convict an accused criminal defendant of a “non-existent offense.” A conviction of a “non-existent offense” implicates the circuit court’s subject matter jurisdiction and, thus, is cognizable on a direct appeal from such a conviction. Indeed, the Supreme Court has held “that ‘[sjubject matter jurisdiction is granted by constitution or statute,’ that ‘[i]t cannot be waived,’ that ‘any judgment rendered without it is void ab initio,’ and that ‘lack of subject matter jurisdiction “may be raised at any time, in any manner, before any court, or by the court itself.’ ” ” Nelson v. Warden, 262 Va. 276, 281, 552 S.E.2d 73, 75 (2001) (citation omitted). Nothing in the constitution or statutes of Virginia permits a judge to convict a person of a criminal offense for violating a statute that merely proscribes conduct.
Because the judge convicted Parker of a non-existent criminal offense, I would hold that the judge exceeded his jurisdictional power in so doing. I would, therefore, reverse the conviction and dismiss the warrant.