COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Fitzpatrick, Judges Felton and Kelsey
Argued at Chesapeake, Virginia


MICHAEL JOSE REESE

                                               MEMORANDUM OPINION[*] BY
v.        Record No. 1279-03-4            CHIEF JUDGE JOHANNA L. FITZPATRICK
                                                    JULY 6, 2004
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Jeffrey W. Parker, Judge

Felipita Athanas, Appellate Defender (Public Defender Commission,
on briefs), for appellant.

Michael T. Judge, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


In this criminal appeal, Michael Jose Reese (appellant) contends that the trial court erred in:

1) instructing the jury on appellant's use of a firearm during the commission of malicious wounding

when the underlying felony charged was unlawful wounding, and 2) refusing to instruct the jury that

the mandatory sentences for the use of a firearm charges must run consecutively to his other

sentences.  Finding no error, we affirm.

I.  BACKGROUND

Under familiar principles of appellate review, we examine the evidence in the light most

favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible

therefrom.  See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997).

---

[*]  Pursuant to Code § 17.1-413, this opinion is not designated for publication.

So viewed, the evidence established that on December 13, 1998, Jaycee Montgomery Peters (Peters) arrived home at approximately 4:00 a.m. and saw appellant's truck parked nearby. Appellant was a former employee of Peters' trucking business. Peters lived with his mother, Teresa Ann Sharp (Peaches), and sister, Angie Sharp (Angie). The next afternoon Peters saw appellant and Peaches seated in her bedroom. Peaches, Peters, and Angie arranged to take appellant to his home in two separate vehicles. Peaches and appellant rode in one car, and Peters and Angie rode in the other.

Peters and Angie arrived at appellant's townhouse and waited for the other two in the car. Peaches and appellant drove in approximately two to three minutes later, and parked one car away from them, leaving a car between the two vehicles. Suddenly, Peaches came to Peters and Angie's car, opened the driver's side back door, and jumped into the backseat. Appellant came to Peaches' door and fired a gun at her five times and three or four times at Angie. The shots killed Peaches, struck Angie once, and struck Peters in three places.

On January 25, 1999, appellant was indicted for two counts of felonious use of a firearm in the commission of a malicious wounding pursuant to Code § 18.2-53.1, two counts of unlawful wounding pursuant to Code § 18.2-51, felonious use of a firearm in the commission of murder pursuant to Code § 18.2-53.1, and murder pursuant to Code § 18.2-32. A jury convicted appellant on all charges. On April 23, 2003, he was sentenced pursuant to the jury's recommendation to life in prison for the murder conviction, and an additional 23 years in prison for the remaining convictions.[1]

---

[1] Only the firearm convictions are at issue in this appeal.

## II. INCONSISTENT VERDICTS

Appellant first contends that the trial court erred when it instructed the jury on the use of a firearm in commission of a malicious wounding pursuant to Code § 18.2-53.1[2] when he was separately indicted[3] for the unlawful wounding of the same two victims pursuant to Code § 18.2-51.[4] Thus, he argues the verdicts are inconsistent and the firearm charges should be dismissed. We disagree.

The Supreme Court and this Court have repeatedly addressed this issue. In <u>Reed v. Commonwealth</u>, 239 Va. 594, 391 S.E.2d 75 (1990), the Supreme Court held that a verdict may

---

[2] Code § 18.2-53.1 states, in pertinent part:

> It shall be unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit . . . malicious wounding as defined in § 18.2-51 . . . . Violation of this section shall constitute a separate and distinct felony.

[3] The indictments at issue state:

> THE GRAND JURY CHARGES THAT on or about the 13th day of December, 1998, in the County of Fauquier, Michael Jose Reese did unlawfully and feloniously use or display in a threatening manner a firearm during the commission of malicious wounding of [Jaycee Montgomery Peters and Angie Marie Sharpe].

> THE GRAND JURY CHARGES THAT on or about the 13th day of December, 1998, in the County of Fauquier, Michael Jose Reese did unlawfully and feloniously shoot or wound [Jaycee Montgomery Peters and Angie Marie Sharpe] with the intent to maim, disable, disfigure, or kill.

[4] Code § 18.2-51 states, in pertinent part:

> If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall, except where it is otherwise provided, be guilty of a Class 3 felony. If such act be done unlawfully but not maliciously, with the intent aforesaid, the offender shall be guilty of a Class 6 felony.

be entered on the "compound offense of using a firearm in the commission of a robbery . . . where, in the same trial, the jury finds the defendant not guilty of the underlying [offense]." Id. at 595, 391 S.E.2d at 75.

"[T]he fact that verdicts may, on their face, arguably appear inconsistent does not provide a basis to reverse either conviction on appeal, provided the evidence is sufficient to support each verdict." Pugliese v. Commonwealth, 16 Va. App. 82, 96, 428 S.E.2d 16, 26 (1993). The "inconsistency" at the heart of the case law on inconsistent verdicts is based upon the premise that "verdicts may appear inconsistent because the jury has elected through mistake, compromise, or lenity to acquit or to convict of a lesser offense for one charged crime that seems in conflict with the verdict for another charged offense." Id.

We addressed an analogous situation in Davis v. Commonwealth, 4 Va. App. 27, 353 S.E.2d 905 (1987). The indictment in that case charged that appellant used or displayed a firearm while attempting to commit robbery. Although the underlying felony of robbery was not charged, appellant was nevertheless convicted of use of a firearm while attempting to commit robbery. We held that "where an indictment is returned for an alleged violation of Code § 18.2-53.1, the underlying felony must be proved beyond a reasonable doubt," but that "to obtain a conviction for a violation of that section it is not necessary to separately indict and prosecute the underlying felony." Id. at 31, 353 S.E.2d at 907.

Appellant contends that Davis does not apply because having no underlying felony charged is different than having a different felony charge. This is a distinction without a difference. Under the reasoning in Davis, appellant need not have been charged with malicious wounding to be convicted of the unlawful use of a firearm in commission of malicious wounding. The fact that the underlying felony of unlawful wounding was charged does not

- 4 -

undermine the rationale of Davis. Additionally, the firearm charge stands independently of any other felony charge, and the jury was properly instructed on all charges. Code § 18.2-53.1 specifically provides that "violation of this section shall constitute a separate and distinct felony." The facts proven at trial clearly establish the basis for a finding that the wounding was done maliciously.

We also addressed this issue in Gaines v. Commonwealth, 39 Va. App. 562, 574 S.E.2d 775 (2003). Gaines, the defendant, was charged with first degree-murder and use of a firearm while committing murder. He was convicted of the lesser offense of manslaughter, but was also convicted of use of a firearm while committing murder. The trial court granted jury instructions that correctly stated the elements of both the murder and firearm charges, but did not address inconsistent verdicts. Gaines' proposed instruction, which the trial court refused, added the words "(not manslaughter)" after the second element of use of a firearm while committing murder charge. We affirmed the conviction, stating that since "[t]he instruction given succinctly stated that to convict the defendant of the firearm offense, the jury must find he was committing murder," the trial court did not err in refusing Gaines' proposed addition. Id. at 567, 574 S.E.2d at 777.

Like Gaines and Davis, the instruction given in the case at bar properly outlined the elements of each offense. "A trial judge does not abuse his discretion by failing to modify a correct statement of the law on the mere chance that a jury may not follow clearly written instructions. We presume the jury will understand, and will follow their instructions." Id. (internal citations and quotations omitted).

Appellant's attempts to distinguish Wolfe v. Commonwealth, 6 Va. App. 640, 371 S.E.2d 314 (1988), and Gray v. Commonwealth, 28 Va. App. 227, 503 S.E.2d 252 (1998), are also

misplaced. In Wolfe, the appellant was indicted for murder and use of a firearm in commission of murder, but was convicted of voluntary manslaughter and use of a firearm in commission of murder. In addressing the inconsistent verdicts issue, we stated:

> [A]ll that can be said about the inconsistency in the verdicts in Wolfe's case is that the jury by mistake, compromise, or lenity, illogically found Wolfe not guilty of the primary felony of murder but nevertheless guilty of the underlying felony of use of a firearm in the commission of murder. Obviously without a transcript or statement of facts, it is impossible to conclude whether Wolfe or the Commonwealth benefited from the inconsistency. The sufficiency of the evidence as to either conviction is not before us. Furthermore, we are not persuaded that the Virginia Supreme Court . . . has adopted the view that the appellate courts should search the trial record in an attempt to reconcile otherwise apparent inconsistency in verdicts rendered in a single jury trial.

Wolfe, 6 Va. App. at 649-50, 371 S.E.2d at 319.

Similarly, in Gray, the appellant was indicted for murder and use of a firearm in commission of murder, and convicted of involuntary manslaughter and use of a firearm in commission of murder. During deliberations, the trial court refused defense counsel's proposed cautionary instruction that an acquittal on the murder charge should lead to a finding of not guilty on the use of a firearm in commission of murder charge. We held that an apparent inconsistency of verdicts does not provide a basis to set aside either conviction as long as the evidence sufficiently supports each verdict. Gray, 28 Va. App. at 232, 503 S.E.2d at 254. The facts proven at trial clearly establish the basis for the finding that the wounding of the two victims was done maliciously.

### III. SENTENCING

Appellant next contends that the trial court erred in failing to instruct the jury that the sentences for the firearm charges must run consecutively and that "on the [other charges] the law is

- 6 -

the Court has the power to consider which way to run them. The jury can advise what they want, but it is up to the court to decide." Under the facts of this case, we affirm the trial court.

After finding appellant guilty, during sentencing deliberations the jury asked: "Are the sentences to run consecutively or concurrently?" The question posed by the jurors dealt with the entire range of six separate charges: murder, unlawful wounding and the firearm charges. In its ruling granting the Commonwealth's instruction,[5] the trial court defined the problem with appellant's position:

> I understand your position in one aspect, Mr. Maslakowski, in terms of the aspect that some of – a certain portion of these offenses do or are mandated to run consecutively. But again, I think that gets into an issue of perhaps the so-called Pandora's box that the Court has some concern about opening, which Mr. Lynn alluded to – is that gets the Jury into this issue of speculating about other aspects of the sentence that do not run by law consecutively. And I just don't think the Court should go down that road.
>
> I certainly don't think the Court should seek an advisory opinion from the Jury as to whether or not they think these cases – or these sentences should run concurrently or not. I don't want to go down that road. And I would not be inclined certainly to do that. . . . But it's my understanding that we were not directed in that area. And until we are, I am going to decline that invitation. So I'm going to give instruction Number 29 as a response to the question that has been submitted to the court.

The Commonwealth's proffered instruction, which the trial judge gave to the jury, was as follows:

> Having found the defendant guilty, you should impose such punishment as you feel is just under the evidence and within the instructions of the court. You are not to concern yourselves with what happens afterwards.

---

[5] We note that appellant did not provide to the court or proffer for the record an instruction that reflected his request.

Relying primarily on Fishback v. Commonwealth, 260 Va. 104, 532 S.E.2d 629 (2000), appellant contends that Code § 18.2-53.1 requires that the jury should have been instructed as he requested. We disagree.

Initially we note that the jury was properly instructed pursuant to the dictates of Fishback on both the abolition of parole, Instruction 30, and geriatric release, Instruction 31. Thus, the issue raised in the instant case is whether the trial court abused its discretion when it failed to answer the general question concerning concurrent versus consecutive sentencing.[6]

We review jury instructions for an abuse of discretion. See Gaines, 39 Va. App. at 568, 574 S.E.2d at 778. "When granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle." Stockton v. Commonwealth, 227 Va. 124, 145, 314 S.E.2d 371, 384 (1984). We do not believe that Fishback and its progeny require the trial court to give an instruction in a mixed penalty case.

In sentencing, juries ascertain "within the limits prescribed by law, the term of confinement in the penitentiary or in jail and the amount of fine . . . ." Code § 19.2-295.

> [T]he punishment fixed by the jury is not final or absolute, since its finding on the proper punishment is subject to suspension by the trial judge, in whole or in part, on the basis of any mitigating facts that the convicted defendant can marshal. The verdict of the jury is the fixing of maximum punishment which may be served. Under such practice, the convicted defendant is entitled to "two decisions" on the sentence, one by the jury and the other by the trial judge in the exercise of his statutory right to suspend . . . . This procedure makes the jury's finding little more than an advisory opinion or first step decision.

---

[6] Because the facts of this case do not encompass only legislatively mandated consecutive sentences, we do not address whether this analysis is applicable to that factual scenario.

Duncan v. Commonwealth, 2 Va. App. 342, 345, 343 S.E.2d 392, 394 (1986) (quoting Vines v. Muncy, 553 F.2d 342, 349 (4th Cir. 1977)).

By vesting the trial court with discretionary authority to suspend or modify the sentence imposed by the jury, the legislature intended to leave the consideration of mitigating circumstances to the court. See id. "When any person is convicted of two or more offenses, and sentenced to confinement, such sentences shall not run concurrently, unless expressly ordered by the court." Code § 19.2-308. "Generally, a sentencing court has discretion under Code § 19.2-308 to order multiple prison sentences to run concurrently." Moore v. Commonwealth, 27 Va. App. 192, 200, 497 S.E.2d 908, 911 (1998).

The rationale of Bell v. Commonwealth, 264 Va. 172, 563 S.E.2d 695 (2002), is instructive in this situation. In addressing a jury question post-Fishback, the Supreme Court noted that answering a jury inquiry should not inject additional speculation into the deliberative process.

> Thus, a jury could not, without engaging in speculation, factor the possibility of sentencing credits . . . . If the jury had inquired about a specific form of early release . . . then the court could have answered that question accurately and dispelled any possible speculation by the jury. Here, however, the question was general . . . . [W]e have never allowed a jury to have that information because of the potential for jury speculation resulting in a harsher sentence than would otherwise be warranted.

Id. at 206-07, 563 S.E.2d at 718.

The instant case presents an analogous factual situation. When the jury asked the question in this case, it had all six charges in front of it: the firearm charges mandated by statute to run consecutively, and the other three which the trial judge could in an appropriate case modify. To advise the jury that the trial court had the discretion to run some sentences concurrently would only cause them to speculate what action the court might take. This could in actuality cause a harsher

sentence than anticipated.[7]  Therefore the trial court did not err by refusing to answer the jury's question on consecutive versus concurrent sentencing.  See also Clagget v. Commonwealth, 252 Va. 79, 96, 472 S.E.2d 263, 272 (1996) (no error not to tell jurors that mandatory sentences have to run consecutively).

Affirmed.

---

[7] We note that on the first-degree murder charge, appellant was given life and that Instruction 30 informed the jury that appellant would not be released unless he met the requirements of Instruction 31, geriatric parole.