COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Chafin, Russell and Senior Judge Clements
Argued at Richmond, Virginia


WILLIAM MORRIS HARRIS

MEMORANDUM OPINION[*] BY
v.      Record No. 1084-17-2          JUDGE TERESA M. CHAFIN
                                      OCTOBER 9, 2018
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHARLOTTE COUNTY
Kimberley S. White, Judge

James C. Bell for appellant.

David M. Uberman, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Following a jury trial, William Morris Harris (appellant) was convicted in the Circuit

Court of Charlotte County (trial court) of use of a firearm in the commission of a robbery in

violation of Code § 18.2-53.1,[1] and possession of a firearm by a convicted felon in violation of

Code § 18.2-308.2. On appeal, appellant contends the evidence was insufficient to support his

convictions because no witness at trial testified that appellant possessed a firearm. For the

reasons that follow, we affirm the trial court's decision.

I. BACKGROUND

"In accordance with established principles of appellate review, we state the facts in the

light most favorable to the Commonwealth, the prevailing party in the trial court[, and] accord

the Commonwealth the benefit of all inferences fairly deducible from the evidence." Riner v.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The jury acquitted appellant of robbery.

<u>Commonwealth</u>, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004). So viewed, the evidence is as follows.

At around 10:00 p.m. on April 17, 2016, Erica Elam was smoking on her front porch when a white car pulled in front of her house. At trial, Elam testified that appellant and Alex Roberts, appellant's cousin, were in the car. Elam testified that appellant got out of the driver's side and approached Elam's porch, asking her for a cigarette. Roberts was still in the front passenger seat of the car with the door open. Appellant asked Elam for another cigarette, which she went into the house to get. When Elam returned with the cigarette, both appellant and Roberts were at her front door, and Roberts had a double-barrel shotgun pointed at Elam. With the shotgun pointed at Elam, appellant asked where Elam's money was and told Roberts to shoot the gun into the house.

Elam said that she did not have any money, and the men instructed her to go inside the home. While Roberts held Elam at gunpoint, Elam watched appellant search her bedroom and take something from her purse. She later discovered that a folded $50 bill was missing from her purse. Appellant came back to Roberts and Elam as another vehicle pulled up to the house. Elam's then-boyfriend, Jamal Thaxton, came inside, and a struggle ensued between the men. Elam testified that she grabbed her children and fled out the back door to hide until she saw both vehicles leave.

Deputy L.E. Scruggs with the Charlotte County Sheriff's Department testified that dispatch reported a possible breaking and entering and robbery, and provided a description of appellant's vehicle. Scruggs located and pursued the vehicle before the suspects abandoned it and fled on foot. Shortly after the foot pursuit, Investigator John Wright was informed by dispatch that appellant had called in and wished to surrender. Wright handcuffed and detained appellant, who said he ran because he was driving while his driving privileges were suspended.

Appellant also initially denied knowing who his passenger was because he had been in trouble with the law before and did not want to get into more trouble because of Roberts' actions.

Wright informed appellant that he was taking him back to Elam's residence to see if Elam could identify appellant as one of the suspects in the reported robbery. On the way, appellant admitted being present at Elam's residence earlier that evening and that Roberts was his passenger. At the house, Elam identified appellant as one of the men involved.

Wright interviewed appellant upon arriving at the sheriff's office. Appellant claimed that Roberts unexpectedly came running into the house with a sawed-off shotgun. He denied taking the $50 bill, but claimed that Roberts took a backpack full of marijuana. At trial, Elam testified that there had been no backpack in her house.

Testifying in his defense at trial, appellant denied seeing a firearm in his car after picking up Roberts. He stated that after he picked up Roberts, they went to Elam's house for Roberts to purchase marijuana from Thaxton. He testified that Roberts was suddenly standing beside him at the front door with a sawed-off shotgun, and appellant asked Roberts what he was doing. Elam put her hands up and said she did not have any marijuana or money. At that point, Thaxton arrived and Roberts turned the gun on him. Appellant testified that he ran to his car and tried to get away by backing out of the driveway, but that Roberts jumped into his car in the process. He denied seeing anything in the car except a backpack, and he claimed that he did not know what Roberts had planned to do at Elam's house. Appellant acknowledged that Roberts pled guilty to robbery with respect to the events that took place at Elam's house.

Following the presentation of evidence and argument, the jury found appellant guilty of possessing a firearm after having been previously convicted of a felony and of using a firearm in the commission of robbery. However, the jury found appellant not guilty of robbery.

## II. ANALYSIS

On appeal, appellant contends that the evidence was insufficient to support his convictions for possession of a firearm by a felon and for use of a firearm in the commission of robbery. He contends that the evidence fails to show that he actively or constructively possessed a firearm and that his conviction for use of a firearm in the commission of a robbery cannot stand where he was acquitted of robbery.

### A. THE EVIDENCE WAS SUFFICIENT FOR THE JURY TO CONVICT APPELLANT OF POSSESSION OF A FIREARM BY A CONVICTED FELON

Appellant argues that the evidence was insufficient to convict him of possession of a firearm by a convicted felon because he did not actually or constructively possess the firearm. He contends that he engaged in no act, aside from his proximity, that would allow him to assert dominion and control over the shotgun. We disagree.

"When reviewing the sufficiency of the evidence to support a conviction, the Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it." Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008). Code § 18.2-308.2(A) makes it unlawful for "any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm." "A conviction for the unlawful possession of a firearm can be supported exclusively by evidence of constructive possession; evidence of actual possession is not necessary." Bolden, 275 Va. at 148, 654 S.E.2d at 586.

> To establish constructive possession of the firearm by a defendant, "the Commonwealth must present evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the firearm and that the firearm was subject to his dominion and control."

Id. (quoting Rawls v. Commonwealth, 272 Va. 334, 349, 634 S.E.2d 697, 705 (2006)). As such, constructive possession is "largely a factual [issue]." Smallwood v. Commonwealth, 278 Va.

625, 631, 688 S.E.2d 154, 157 (2009) (quoting Ritter v. Commonwealth, 210 Va. 732, 743, 173 S.E.2d 799, 807 (1970)). Furthermore, possession "need not always be exclusive." Ritter, 210 Va. at 741, 173 S.E.2d at 806. "Possession may be joint or several. Two or more persons may be in possession where each has the power of control and intends to exercise control jointly." Smallwood, 278 Va. at 631, 688 S.E.2d at 157 (quoting Burnette v. Commonwealth, 194 Va. 785, 792, 75 S.E.2d 482, 487 (1953)).

Applying these principles to the case at hand, it is clear the evidence was sufficient for the jury to find that appellant constructively possessed the shotgun. It is undisputed that appellant did not actually possess the firearm. However, despite appellant not physically possessing or manipulating the firearm, the testimonial evidence presented to the jury established that appellant acted in such a manner as to show that he was aware of the firearm and intentionally used its presence to his benefit to participate in and accomplish wrongdoing.

Appellant testified that he saw Roberts run up and point the shotgun at Elam; thus, at that point, he became aware of the presence and character of the firearm, even if he had not been aware of it when he initially picked up Roberts. Rather than telling Roberts to put the gun away or to stop what he was doing, appellant instead instructed Roberts to shoot into Elam's house. By directing Roberts to shoot the shotgun into Elam's home, appellant was asserting dominion and control over the firearm. Furthermore, according to Elam, while Roberts was holding Elam at gunpoint, appellant used the opportunity to enter Elam's private bedroom, search through her personal belongings, and take her property without her permission.

Based on appellant's conduct and statements, it is clear that the evidence established not just proximity, but also appellant's knowledge of the shotgun's presence and character, as well as his dominion and control over its use. As such, the evidence was sufficient for the jury to find that appellant constructively possessed the firearm.

## B. THE EVIDENCE WAS SUFFICIENT FOR THE JURY TO CONVICT APPELLANT OF USE OF A FIREARM IN THE COMMISSION OF ROBBERY

Appellant also argues that the evidence was insufficient to support his conviction for use of a firearm in the commission of robbery. To support this contention, he argues that because the jury acquitted him of robbery, and because robbery is an essential element of the use-of-a-firearm charge, there is no predicate offense to support the compound offense, so therefore his conviction cannot stand. He further argues that the evidence was also otherwise insufficient to support the conviction because it failed to show that he used the firearm.

For purposes of our discussion, the Commonwealth acknowledges that the jury rendered an inconsistent verdict by acquitting appellant of robbery but finding him guilty of use of a firearm in the commission of robbery. Nevertheless, the Commonwealth argues that the conviction should be affirmed because the evidence before the jury was sufficient to support convictions for both the predicate and compound offenses, and because it is not practically possible to discern the reasons for the jury's decision. We agree with the Commonwealth.

Code § 18.2-53.1 states, "It shall be unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm . . . in a threatening manner while committing or attempting to commit . . . robbery . . . ." To support a conviction for violating Code § 18.2-53.1, "the Commonwealth must prove that the accused actually had a firearm in his possession and that he used or attempted to use the firearm or displayed the firearm in a threatening manner while committing or attempting to commit robbery or one of the other specified felonies." Yarborough v. Commonwealth, 247 Va. 215, 218, 441 S.E.2d 342, 344 (1994).

While recognizing Virginia precedent upholding inconsistent verdicts, appellant likens his case to Jay v. Commonwealth, 275 Va. 510, 659 S.E.2d 311 (2008).[2] In Jay, Darius Tremayne James was convicted in a bench trial of attempted robbery and attempted use of a firearm in the commission of attempted robbery. Id. at 520, 659 S.E.2d at 317. Upon finding the evidence equally susceptible to more than one interpretation, and therefore insufficient as a matter of law for the trial court to have convicted James of attempted robbery, the Court reversed his conviction. Id. at 527, 659 S.E.2d at 321. The Court further stated that the reversal of the attempted robbery conviction "necessarily require[d] a reversal of the conviction for attempted use of a firearm during the commission of attempted robbery under Code § 18.2-53.1," because, "[u]nder the plain language of Code § 18.2-53.1, there can be no conviction for use or attempted use of a firearm when there has been no commission of one of the predicate offenses enumerated in that statute." Id.

Jay, however, can be readily distinguished from the present case. Significantly, we note that James was convicted in a bench trial, not a jury trial, and that his original convictions were not inconsistent. The trial court originally convicted James of both the predicate offense and the compound offense. Additionally, the Supreme Court was acting in its appellate capacity conducting a sufficiency review, not as a factfinder weighing the evidence. By reversing the conviction for the predicate offense, the Supreme Court negated an essential element of the compound offense. Had the Supreme Court reversed only the attempted robbery conviction and not the compound firearm conviction, the Court itself would have been at fault for the resulting

---

[2] Jay was a consolidated appeal in which the Supreme Court addressed similar procedural issues in the criminal appeals of Robert Lee Jay and Darius Tremayne James. James's case presented an additional sufficiency issue that the Court addressed in the same opinion.

inconsistency.[3]  In short, the present case presents a wholly different posture than that considered by the Supreme Court in Jay.

Virginia has generally held that inconsistent verdicts rendered by a jury do not constitute reversible error.  In Reed v. Commonwealth, 239 Va. 594, 391 S.E.2d 75 (1990), the Virginia Supreme Court relied on Dunn v. United States, 284 U.S. 390 (1932), and United States v. Powell, 469 U.S. 57 (1984), when declining to entertain a challenge to an inconsistent jury verdict involving predicate and compound offenses.  Quoting Powell, the Court stated that such verdicts "present a situation where 'error,' in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored."  Reed, 239 Va. at 597, 391 S.E.2d at 77 (quoting Powell, 469 U.S. at 65).

> The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.  We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.

Wolfe v. Commonwealth, 6 Va. App. 640, 647-48, 371 S.E.2d 314, 318 (1988) (quoting Powell, 469 U.S. at 63).  "For this reason and the fact that the government is precluded from appealing the acquittal verdict, the [United States Supreme] Court concluded that inconsistent verdicts should not provide the basis for an appeal by the defendant."  Id. at 648, 371 S.E.2d at 318 (citing Powell, 469 U.S. at 66).

---

[3] While unnecessary to address the propriety of an appellate inconsistency at the present juncture, we note that this Court has previously held that elementally inconsistent verdicts rendered by a trial court as opposed to a jury are generally reversible error.  See Akers v. Commonwealth, 31 Va. App. 521, 530-32, 525 S.E.2d 13, 18-19 (2000) (finding that "the principles which supported affirmance of inconsistent jury verdicts did not apply in bench trials" and reversing a bench trial conviction for use of a firearm in the commission of a malicious wounding where the defendant was acquitted of malicious wounding); but see Cleveland v. Commonwealth, 38 Va. App. 199, 204, 562 S.E.2d 696, 698 (2002) (affirming an inconsistent bench trial verdict because the trial court offered a valid explanation on the record for rendering its decision and apparently considered the ruling to be an act of lenity).

It has been consistently noted that such verdicts may come about for various reasons:

> (1) the jury may have made a mistake in failing to convict the defendant of the predicate crime, although finding him guilty of the compound offense; (2) on the other hand, the jury may have been mistaken in failing to acquit the defendant of the compound offense after finding him not guilty of the predicate offense; or (3) perhaps the jury simply decided to be lenient with the defendant and convict him only of the compound offense, which carried a lesser penalty than that attached to the predicate offense.

Reed, 239 Va. at 597, 391 S.E.2d at 77. However, the exact reasoning behind the jury's decision is unlikely to be brought to light, considering Virginia is "more careful than most states to protect the inviolability and secrecy of jurors' deliberations." Id. at 598, 391 S.E.2d at 77. For this reason, Virginia courts have adopted the position that speculation or inquiry as to whether an inconsistent jury verdict was an inadvertent mistake or an intentional act of lenity would be an undertaking of guess-work. As a result of the foregoing considerations, the Court in Reed reaffirmed its stance that such verdicts "may not be successfully assailed." Id. Rather than impose the Court's own interpretation of what could have or should have happened, the best course of action is to leave the jury's decision intact.

In such cases, where the evidence is otherwise sufficient to support the offense for which the accused was actually convicted, the conviction will stand. See Tyler v. Commonwealth, 21 Va. App. 702, 708, 467 S.E.2d 294, 296 (1996) (citing Pugliese v. Commonwealth, 16 Va. App. 82, 96, 428 S.E.2d 16, 26 (1993) ("Both verdicts will be upheld, despite the apparent inconsistency, provided the evidence supports each verdict.")). Aside from being acquitted of the underlying robbery, appellant argues that the evidence was otherwise insufficient to support the conviction for use of a firearm in the commission of robbery because he was not the perpetrator who possessed or used the firearm.

As previously discussed, the evidence was sufficient to establish that appellant constructively possessed the firearm. Furthermore, under settled principles of criminal law,

appellant, who was acting in concert with Roberts, would be guilty as a principal in the second degree of possessing and using the firearm used by his accomplice.  See Carter v. Commonwealth, 232 Va. 122, 125, 348 S.E.2d 265, 267 (1986); Cortner v. Commonwealth, 222 Va. 557, 562-63, 281 S.E.2d 908, 911 (1981).  Although it is undisputed that appellant was not the perpetrator physically holding the shotgun, the evidence established that Roberts used the shotgun to hold Elam at gunpoint.  In the process, appellant asked Elam where her money was, instructed Roberts to shoot the gun into the house, and took advantage of Elam's detention to search her bedroom and personal belongings.  Afterward, Elam discovered that $50 was missing from her purse.[4]

The jury was instructed on principles of concert of action and could therefore find that appellant effectively used the shotgun through Roberts to further his own participation in their shared criminal activity.  As such, the evidence was sufficient to support a conviction under Code § 18.2-53.1.  Therefore, the trial court committed no error in denying appellant's motion to strike and presenting the question to the jury for determination, and the evidence was sufficient such that the jury could convict appellant of use of a firearm in the commission of robbery.

### III.  CONCLUSION

For the reasons stated, we affirm the trial court's decision.

Affirmed.

---

[4] The jury also heard testimony that Roberts had pled guilty to robbery based on the events of that night and that despite ultimately surrendering himself to law enforcement, appellant initially fled from police and lied about Roberts being in the car with him.  See Ragland v. Commonwealth, 67 Va. App. 519, 533, 797 S.E.2d 437, 444 (2017) ("[A]ffirmative acts of falsehood or flight immediately following the commission of a crime . . . tend to show a person's guilty knowledge of, and participation in, a criminal act." (citing Jones v. Commonwealth, 279 Va. 52, 57, 688 S.E.2d 269, 272 (2010))).