COURT OF APPEALS OF VIRGINIA

Present:    Judges Elder, Humphreys and Senior Judge Willis
Argued at Chesapeake, Virginia


TERRY WILLIAM CORBIN

                                                     MEMORANDUM OPINION[*] BY
v.        Record No. 2179-06-1                       JUDGE JERE M. H. WILLIS, JR.
                                                            OCTOBER 2, 2007

COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                          William R. O'Brien, Judge

          Mark L. McKinney (Dodl & McKinney, P.C., on brief), for
          appellant.

          Gregory W. Franklin, Assistant Attorney General (Robert F.
          McDonnell, Attorney General, on brief), for appellee.


        A jury convicted Terry William Corbin of carjacking, abduction, and robbery.  It acquitted

him of using a firearm in the commission of robbery.  On appeal, Corbin contends (1) that the

evidence was insufficient to support his convictions and (2) that the trial court erred in refusing to

set aside the jury's verdicts because they were inconsistent.  We affirm the judgment of the trial

court.

                                            FACTS

        "When the sufficiency of the evidence is challenged on appeal, we determine whether the

evidence, viewed in the light most favorable to the prevailing party, the Commonwealth, and the

reasonable inferences fairly deducible from that evidence support each and every element of the

charged offense."  Haskins v. Commonwealth, 31 Va. App. 145, 149-50, 521 S.E.2d 777, 779

(1999).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On March 16, 2004, Donna Lowry and her husband traveled from their North Carolina home to spend the night at a Virginia Beach resort. That night, Ms. Lowry left the room alone to purchase takeout food. She parked her car in front of Nat's Sports Grill restaurant, went inside, placed an order for takeout food, and waited for her order at the bar.

Ms. Lowry noticed two police officers sitting at a table. She saw Corbin at the bar, attempting to pay the bartender, Maryanne Lomonaco, with quarters he had in a Crown Royal bag. He emotionally told a waitress, Marianne Hinds, that his sister had died and that her funeral had been earlier that day. He gave Hinds a handful of quarters from the bag. Lomonaco and Hinds testified that Corbin and Ms. Lowry talked at the bar.

Upon receiving her takeout order, Ms. Lowry exited the restaurant and opened a door of her car. As she was putting her food in the car, she felt someone bump her back. She turned and saw Corbin holding a gun. He ordered her to get in the car. She got into the driver's seat. Corbin entered the car and climbed into the front passenger seat. He told Ms. Lowry to "drive, drive, drive."

At Corbin's insistence, Ms. Lowry drove around Virginia Beach. She testified that as she drove Corbin was

> kind of screaming real loud, yelling, asking me how to work the radio, what button changed the stations on the radio. He's obsessed with 106 on the radio. He kept turning the volume up and down. Just talking crazy. Elton John's song came on, and he said that he wrote it. He was asking me if I knew AC/DC, and I told him I hadn't heard about them, and he started yelling at me – What do you mean you haven't heard? Everybody's heard of them.

Ms. Lowry feared Corbin was going to kill her.

Ms. Lowry drove to the resort where she was staying, parked, and said she had to go to the bathroom. She hoped to enter the resort, lock the door behind her, and escape. However, Corbin forbade her to open the car door and ordered her to continue driving.

For thirty minutes to an hour, Ms. Lowry drove in obedience to Corbin's directions. She repeated her request to use a bathroom. Eventually, Corbin had her stop at Richard Elkins' house, where several people were congregated on the porch. He told her she could use the bathroom in the house, but if she tried anything he would shoot one of the people on the porch. While Ms. Lowry was in the bathroom, Elkins saw the handle of a gun in Corbin's pocket. When Ms. Lowry returned, Corbin screamed at her to get back in the car. She complied. Elkins testified that Corbin seemed to have Ms. Lowry "trained like a dog."

Ms. Lowry continued to drive Corbin around Virginia Beach. He would briefly appear rational, then begin screaming again. He said he was going to "shoot his brains out" and Ms. Lowry would have to clean up the mess.

At one point, Corbin had Ms. Lowry drive to a 7-Eleven store. He took the car keys, entered the store, and purchased cigarettes. He appeared friendly with one of the store clerks. Ms. Lowry testified she remained in the car because she did not think she could get away. When Corbin returned with a brand of cigarettes Ms. Lowry did not smoke, he ordered her to go in the store and exchange them. When she made the exchange, she did not tell the store clerks to call the police or that she needed help.

After Ms. Lowry returned to the car, Corbin put the keys in the ignition and told her to start driving again. He directed her down a one-way street and told her to stop. He took her jewelry and wallet and left.

Ms. Lowry drove directly to the resort where she was staying, arriving after 2:00 a.m. She woke her husband, who had been unaware of her lengthy absence, and told him what had happened. She decided not to call the police because she had no evidence to identify Corbin. Because her wallet contained identifying information, she wanted to get home to her children without delay. She and her husband left the hotel that night and returned to North Carolina.

While cleaning her car a few days later, Ms. Lowry found an identification card bearing Corbin's name. She then returned to Virginia Beach and reported the incident to the police. She drove around Virginia Beach and was able to identify various landmarks, including the 7-Eleven store she and Corbin had visited.

## I.

Contending Ms. Lowry's testimony was inherently incredible and unworthy of belief, Corbin argues the evidence was insufficient to support his convictions.[1] He argues the jury could not reasonably conclude that Ms. Lowry remained with him unwillingly. He notes that she failed to take advantage of numerous opportunities to escape or to obtain help. Further discrediting her, he contends, is her failure to report the incident to the police until several days later. He argues that her testimony was inconsistent with Hinds' and Lomonaco's testimony that she spoke with him inside the bar.

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). The jury's finding may be disturbed on appeal only if this Court finds that Ms. Lowry's testimony was "inherently incredible, or so contrary to human experience as to render it unworthy of belief." Fisher v. Commonwealth, 228 Va. 296, 299, 321 S.E.2d 202, 204 (1984).

We find no basis to hold that Ms. Lowry's testimony was inherently incredible or so contrary to human experience as to render it unworthy of belief. Based upon Corbin's display of

---

[1] On appeal, appellant contends the evidence was insufficient to prove specific elements of the offenses. Appellant did not raise these arguments in his motion to strike at the conclusion of all the evidence or in a motion to set aside the verdict. "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). See Rule 5A:18. Accordingly, Rule 5A:18 bars our consideration of these portions of appellant's argument on appeal.

a gun and his bizarre behavior, Ms. Lowry reasonably feared he would kill her. This explained her failure to make a more determined attempt to escape.

Moreover, Ms. Lowry's testimony was corroborated by other evidence. She reported the incident to her husband as soon as she returned to their hotel room. When she discovered evidence identifying her assailant, she promptly contacted the police. She was able to locate several Virginia Beach landmarks she had seen while Corbin held her captive.

Elkins saw a gun in Corbin's possession when he and Ms. Lowry stopped for her to use the bathroom. Elkins felt something was not right about Ms. Lowry's presence with Corbin and that he appeared to have her "trained like a dog."

Contrary to Corbin's assertion, the evidence presented no conflict regarding Ms. Lowry's contact with him at the bar. Hinds and Lomonaco testified that he and Ms. Lowry conversed at the bar. Ms. Lowry never stated whether she spoke to him there.

All the circumstances Corbin asserts were before the jury, which resolved the issue of credibility in favor of Ms. Lowry. "'The living record contains many guideposts to the truth which are not in the printed record; not having seen them ourselves, we should give great weight to the conclusions of those who have seen and heard them.'" Ketchum v. Commonwealth, 12 Va. App. 258, 263, 403 S.E.2d 382, 384 (1991) (quoting Bradley v. Commonwealth, 196 Va. 1126, 1136, 86 S.E.2d 828, 834 (1955)). The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that Corbin was guilty of robbery, abduction, and carjacking.

## II.

Corbin argues the trial court erred in refusing to set aside the jury verdicts convicting him of the three felonies because they were inconsistent with his acquittal of the firearm offense. However,

> [t]he law regarding inconsistent verdicts is well settled in this Commonwealth. As this Court has held, "[t]he fact that verdicts may, on their face, arguably appear inconsistent does *not* provide a basis to reverse either conviction on appeal, provided the evidence is sufficient to support each verdict." Pugliese v. Commonwealth, 16 Va. App. 82, 96, 428 S.E.2d 16, 26 (1993) (citing United States v. Powell, 469 U.S. 57, 66, 105 S. Ct. 471, 477, 83 L.Ed.2d 461 (1984) (emphasis added). "Jury verdicts may appear inconsistent because the jury has elected through mistake, compromise, or lenity to acquit or to convict of a lesser offense for one charged crime that seems in conflict with the verdict for another charged offense." Pugliese, 16 Va. App. at 96, 428 S.E.2d at 26.

Tyler v. Commonwealth, 21 Va. App. 702, 707-08, 467 S.E.2d 294, 296 (1996) (footnote omitted). Accordingly, the trial court did not err in refusing to set aside the verdicts.

## CONCLUSION

The judgment of the trial court is affirmed.

Affirmed.